[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON PLAINTIFFS' MOTIONS TO STRIKEDEFENDANTS' AFFIRMATIVE DEFENSES AND SPECIAL DEFENSE
FACTS
On February 15, 1996, the plaintiffs, A. James Zeller (Zeller) and Torringford Commercial Associates Limited Partnership, filed a four-count seventh amended complaint against the defendants. The defendants in this case consist of two groups. The first group is comprised of individual members of an unincorporated association known as "Neighbors Against the Mall" (individual defendants). These defendants are Joseph Consolini, Elizabeth Consolini, Robert Rizzo, Conie Lopardo, Marlene Lopardo, Robert Gioiele, Donna Gioiele, Ronald Clifford, Richard Gryniuk, Mary Jane Gryniuk, Edward Brady, Louise Brady, Richard Bascetta, Kathleen Bascetta, Richard Dwan, Georgette Dwan and CT Page 6310 Isobel Roberts. The second group of defendants consists of attorney Maureen E. Donahue and the law firm of Howd, Lavieri and Finch, with whom Donahue was formerly associated (Donahue defendants).
In summary, the plaintiffs allege that through the course of several proceedings the plaintiffs applied to the Planning and Zoning Commission of the City of Torrington (Zoning Commission) for a change of zone from residential to restricted commercial and industrial so that the plaintiffs could construct a shopping mall on the property owned by Zeller. On June 25, 1991, the plaintiffs entered into an agreement of purchase and sale with Conroy Development Company (Conroy) for the price of $4,300,000. As a condition precedent to said purchase, the plaintiffs were obligated to deliver a final and non-appealable zoning certificate and zoning approvals regarding the property. The plaintiffs allege that the defendants had knowledge of the contract at its inception.
In count one the plaintiffs allege tortious interference with business relations against the individual defendants, in that those defendants, on February 6, 1992, filed an application for a change of zone with the Zoning Commission on the property owned by Zeller. The Commission denied the application and the defendants filed an appeal of their denial with the Superior Court. The plaintiffs further allege that by way of said appeal the defendants sought an order restraining the Zoning Commission from granting any further applications to be put into effect, or the approving of any site plans, or the taking of any action decided or intended to allow or permit any person to take action pursuant to the prior permits, pending the completion of the proceeding. The Superior Court (Dranginis, J.) dismissed the appeal.
It is alleged that the individual defendants' application for a zone change on the plaintiffs' property and their subsequent appeal are proceedings which those defendants have initiated in bad faith and/or with malice with the sole intent of harassing and intimidating the plaintiffs and interfering with their contractual relations with Conroy and that such interference was a substantial factor in the cancellation of said contract.
The second count alleges that the individual defendants' application for a zone change, which ended in the plaintiffs' favor, and their subsequent unsuccessful appeal are sham CT Page 6311 proceedings brought without probable cause and with malicious intent to unjustly vex and trouble the plaintiffs.
The third and fourth count are directed at the Donahue defendants. The plaintiffs reallege, in count three, the allegations from count one, and further allege that because Attorney Donahue assisted the individual defendants in the initiation and prosecution of said proceedings, the Donahue defendants are liable to the plaintiffs for the damages occasioned by the individual defendants' application for a zone change and their subsequent appeal. Similarly, count four realleges the allegations of count two, vexatious litigation, against the Donahue defendants.
Thereafter, the individual defendants, on January 16, 1997, filed an answer alleging two special defenses to counts one and two. The individual defendants allege that their actions are absolutely privileged under the "Noerr-Pennington Doctrine," because all alleged activities consisted of petitioning activity aimed at procuring favorable government action. In addition, they allege that, at all times relevant, they were represented by counsel, and all acts alleged by the plaintiffs were undertaken by them in good faith reliance upon the advice of their attorney.
The Donahue defendants also filed an answer alleging two special defenses for the counts directed towards them. In their first special defense, the Donahue defendants also allege that their actions are insulated from liability by the "Noerr-Pennington Doctrine." The second special defense alleges that the causes of action are barred by General Statutes § 52-577.
On May 5, 1997, the plaintiffs filed a motion to strike the individual defendants' "Noerr-Pennington Doctrine" special defense to counts one and two on the ground that the doctrine only applies in antitrust suits and actions taken pursuant to the Connecticut Unfair Trade Practices Act (CUTPA). The plaintiffs also moved to strike the advice of counsel special defense to count one, tortious interference with business relations, on the ground that the defense is only applied in malicious prosecution and vexatious litigation actions. That same day, the plaintiffs also moved to strike the Donahue defendants' first special defense, "Noerr-Pennington Doctrine," to counts three and four.
As required by Practice Book § 155, the plaintiffs have filed a memorandum in support of their motion to strike. The CT Page 6312 defendants have each filed a memorandum in opposition, contending that the "Noerr-Pennington Doctrine" is applicable to tortious conduct other than antitrust and CUTPA claims and that the advice of counsel defense is proper against claims of tortious interference where the alleged impropriety arises out of prior litigation.
DISCUSSION
"The purpose of a motion to strike is to contest the legal sufficiency of the allegations of any complaint, counterclaim, or cross complaint to state a claim upon which relief can be granted." Waters v. Autouri, 236 Conn. 820, 825, 676 A.2d 357
(1996). Pursuant to Practice Book § 152(5) a plaintiff can also move to strike a special defense. See Nowak v. Nowak,175 Conn. 112, 116, 394 A.2d 368 (1978). "In ruling on a motion to strike, the court is limited to the facts alleged in the complaint"; Id.; and the grounds specified in the motion.Blancato v. Feldspar Corp. , 203 Conn. 34, 44, 522 A.2d 1235
(1987). "The motion to strike admits all facts well pleaded."Mingachos v. Central Broadcasting Systems, Inc., 196 Conn. 91,108, 491 A.2d 368 (1985). "The purpose of a special defense is to plead facts that are consistent with the allegations of the complaint but demonstrate, nonetheless, that the plaintiff has no cause of action. Practice Book § 164." Grant v. Bassman,221 Conn. 465, 472-73, 604 A.2d 814 (1992).
 I
The "Noerr-Pennington Doctrine" refers to a trilogy of United States Supreme Court cases, Eastern Railroad PresidentsConference v. Noerr Motor Freight, Inc., 365 U.S. 127,81 S.Ct. 523, 5 L.Ed.2d 464 (1961), United Mine Workers v. Pennington,381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965), and CaliforniaMotor Transport Co. v. Trucking Unlimited, 404 U.S. 508,92 S.Ct. 609, 30 L.Ed.2d 642 (1972), holding that activities attempting to influence legislative, executive, administrative or judicial action to eliminate competition are wholly immune from federal antitrust liability unless the conduct falls within the sham exception to the doctrine.
Although no Connecticut appellate court has determined whether the "Noerr-Pennington Doctrine" applies to common law causes of action, the Second Circuit of Appeals has concluded that the Connecticut appellate courts will probably adopt the CT Page 6313 "Noerr-Pennington Doctrine" and the sham exemption when presented with the opportunity to do so. The Second Circuit stated that "[w]e believe that Connecticut's courts would be guided by the strong suggestions from the federal courts that imposing liability for the act of filing a non-sham lawsuit would present serious constitutional problems, and would construe Connecticut law to avoid those problems. Especially since Noerr-Pennington's statutory exemption is defined in terms of first amendment activity, we are confident that Connecticut's courts would carve out a similar exception to CUTPA and the common law, whether or not they believed that they were required to do so by the Constitution." Suburban Restoration Co. v. ACMAT Corp.,700 F.2d 98, 102 (2d Cir. 1983). Resolution of whether the "Noerr-Pennington Doctrine" applies to common claims of tortious interference and vexatious litigation is not required because the plaintiffs have alleged that the proceedings at issue were a sham. Therefore, even assuming that the "Noerr-Pennington Doctrine" applies, the sham exemption would make the doctrine not applicable in this instance.
In Professional Real Estate Investors, Inc. v. ColumbiaPictures Industries, Inc., 508 U.S. 49, 60-62, 113 S.Ct 1920,123 L.Ed.2d 611 (1993), the court outlined a two-part test to define sham litigation. First, the lawsuit must be objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits. Id. In the second part, "the court should focus on whether the baseless lawsuit conceals an attempt to interfere directly with the business relationships of a competitor through the use [of] governmental process as opposed to the outcome of that process as an anticompetitive weapon." (Citations omitted; internal quotation marks omitted). Id. "Essentially, then, a sham involves a defendant whose activities are not genuinely aimed at procuring favorable government action at all." (Citations omitted; internal quotation marks omitted).Roncari Development Co. v. GMG Enterprises, Inc., Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 394934 (Jan. 8, 1997, Sheldon, J.), citing City of Columbia v.Omni Outdoor Advertising, 499 U.S. 365, 398, 111 S.Ct. 1344,113 L.Ed.2d 382 (1991).
In counts two and four the plaintiffs specifically allege that the application for a change of zone and the subsequent appeal were sham proceedings maliciously brought to interfere with the plaintiffs contract with Conroy. Counts one and three, while not utilizing the word "sham," allege that the defendants initiated the proceedings in bad faith with the sole intent of CT Page 6314 harassing and intimidating the plaintiffs and interfering with their contractual relations. In all of the counts, if proved, the plaintiffs' allegations would show that the defendants' application and the subsequent appeal were objectively baseless and concealed an attempt to interfere directly with the plaintiffs' business relationship, and therefore "Noerr-Pennington" would not apply.
On the other hand, if the plaintiffs' allegations of "sham" proceedings were not proved, their suit would fail. The plaintiffs acknowledged this during oral argument. Such failure would make the special defense irrelevant.
Accordingly, the motion to strike the "Noerr-Pennington Doctrine" special defense from both the individual defendants' answer and the Donahue defendants' answer is granted.
 II
"Advice of counsel is a complete defense to an action of malicious prosecution or vexatious suit when it is shown that the defendant made the complaint in a criminal action or instituted his civil action relying in good faith on such advice, given after a full and fair statement of all facts within his knowledge, or which he was charged with knowing. The fact that the attorney's advice was unsound or erroneous will not affect the result. Brodrib v. Doberstein, 107 Conn. 294, 296, 140 A. 483
[1928]; Smith v. Ring, 62 Conn. 515, 26 A. 1059 [1893]."Vandersluis v. Weil, 176 Conn. 353, 361, 407 A.2d 982 (1978).
The Supreme Court has stated that to determine whether specific facts alleged to constitute tortious interference are improper, where the claimed impropriety arises out of previous litigation, courts should look for guidance to the principles that have evolved to define the tort of malicious prosecution and vexatious litigation, because those kindred torts have also had to address the competing policies of deterrence of groundless litigation and protection of good faith access to courts. Blakev. Levy, 191 Conn. 257, 262-63, 464 A.2d 52 (1983). In Blake, the court held that in a cause of action for tortious interference with business relations, favorable termination becomes an element of the tort[1], and the action cannot be maintained when the underlying lawsuit terminated in a good faith negotiated settlement. CT Page 6315
Since the elements of vexatious litigation become part of the tort of tortious interference where the claimed interference results from prior litigation, then the defense of reliance of advice of counsel must also be available for a claim of tortious interference as it would be for vexatious litigation. A contrary result would enable a creative litigant to substitute one tort theory for another, thereby circumventing the defense.
For the foregoing reasons, the plaintiffs' motion to strike the individual defendants' second special defense as to count one is denied.
WALSH, R., J.