A. JAMES ZELLER ET AL. *v.* JOSEPH
CONSOLINI ET AL.
(AC 19372)

Lavery, C. J., and Spear and Cretella, Js.

Argued March 28—officially released August 29, 2000

*James A. Zeller*, with whom, on the brief, was *Joseph A. Mengacci*, for the appellants (plaintiffs).

*Martin B. Margulies*, with whom, on the brief, were *Charlene Lavoie* and *Peter Schwartz*, for the appellees (defendants).

*Opinion*

LAVERY, C. J. The plaintiffs[1] appeal from the judgment of the trial court rendered after the granting of the defendants'[2] motion for summary judgment. The

---

[1] The plaintiffs are A. James Zeller and Torringford Commercial Associates Limited Partnership.

[2] The defendants are the law firm of Howd, Lavieri and Finch, attorney Maureen E. Donohue and Joseph L. Consolini, Elizabeth J. Consolini, Robert A. Rizzo, Conio C. Lopardo, Marlene R. Lopardo, Robert A. Gioiele, Donna J. Gioiele, Ronald Clifford, Richard S. Gryniuk, Mary Jane Gryniuk, Edward M. Brady, Louise H. Brady, Richard R. Dwan, Georgette T. Dwan, Richard Bascetta, Kathleen Bascetta and Isobel B. Roberts.

plaintiffs contend that the court improperly (1) rendered summary judgment because there was a genuine issue of material fact as to whether the defendants' prior actions lacked probable cause and (2) imposed on the plaintiffs the burden of establishing that the defendants were barred by statute or regulation from applying to rezone the plaintiffs' property. We affirm the judgment of the trial court.

The following facts are relevant to this appeal.[3] The plaintiffs, A. James Zeller and Torringford Commercial Associates Limited Partnership, claim that the defendants tortiously interfered with a business relationship and initiated vexatious litigation. These claims arise out of challenges made by the defendants to the plaintiffs' applications to the planning and zoning commission of the city of Torrington (commission). Zeller owns six parcels of land in Torrington totaling approximately thirty-six acres, and is the general partner and majority shareholder of the plaintiff Torringford Commercial Associates Limited Partnership. The defendants consist of individual members of an unincorporated association known as Neighbors Against the Mall, attorney Maureen E. Donohue and the law firm of Howd, Lavieri and Finch.

In its memorandum of decision granting the defendants' motion for summary judgment, the court stated: "In 1987 and 1988, the plaintiffs sought and received zone changes for the subject property. After each zone change, the neighborhood defendants appealed the decision of the planning and zoning commission to the Superior Court. In both instances, the court dismissed the appeals; in both instances, these defendants sought certification to appeal further to the Appellate Court,

---

[3] Previous decisions in this case provide the facts we discuss and additional factual background. See *Zeller* v. *Consolini*, 235 Conn. 417, 667 A.2d 64 (1995); *Zeller* v. *Consolini*, Superior Court, judicial district of Litchfield, Docket No. 60356 (June 26, 1997) (19 Conn. L. Rptr. 677).

which that court denied. In 1990, the inland wetlands commission of the city of Torrington granted a permit to the plaintiffs relating to the development of a mall on this property. The neighborhood defendants appealed that decision to the Superior Court, which dismissed the appeal. Certification was granted by the Appellate Court, and that court affirmed the Superior Court judgment dismissing the appeal in September, 1992.

"The events forming the basis of the plaintiffs' complaint here began in February, 1992, when the neighborhood defendants applied to the planning and zoning commission for the city of Torrington for a zone change of the subject property owned by the plaintiffs from restricted commercial to industrial park. Their application was denied, and through the representation of the attorney defendants, the neighborhood defendants appealed to the Superior Court. The plaintiff Zeller intervened as a defendant in that appeal, and the appeal was dismissed in March, 1993. The plaintiffs brought this action, claiming that the defendants knew that the plaintiffs had entered into a contract in June, 1991, to sell the subject property to a development company, conditioned on the plaintiffs' ability to deliver a final, nonappealable zoning certificate and zoning approvals for the property. The plaintiffs allege that the defendants' actions in seeking a zone change and appealing the denial to the Superior Court were sham proceedings, brought without probable cause and with improper motives."

The defendants moved for summary judgment and argued that, as a matter of law, their actions were based on probable cause so that judgment on all counts must enter in their favor. In a thoughtful and thorough memorandum of decision, the court, applying the *Noerr-Pen-*

*nington*[4] doctrine, granted the motion for summary judgment in favor of the defendants. The plaintiffs appealed to this court.

I

The plaintiffs claim that the court improperly rendered summary judgment for the defendants because there was a genuine issue of material fact as to whether the defendants' prior application for a zoning change was supported by probable cause. We disagree.

"Our standard of review of a trial court's decision to grant a motion for summary judgment is well established. Practice Book § 384 [now § 17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . *Miller* v. *United Technologies Corp.*, 233 Conn. 732, 744–45, 660 A.2d 810 (1995). In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . *Tarzia* v. *Great Atlantic & Pacific Tea Co.*, 52 Conn. App. 136, 145, 727 A.2d 219 [cert. granted on other grounds, 248 Conn. 920, 734 A.2d 569] (1999).

"On appeal, [w]e must decide whether the trial court erred in determining that there was no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . *Avon Meadow Condominium Assn., Inc.* v. *Bank of Boston Connecticut*, 50 Conn. App. 688, 693, 719 A.2d 66, cert. denied, 247 Conn. 946, 723 A.2d 320 (1998). Because the trial court rendered judgment for the defendants as a matter of law, our review is plenary and we must

[4] See *United Mine Workers* v. *Pennington*, 381 U.S. 657, 85 S. Ct. 1585, 14 L. Ed. 2d 626 (1965), and *Eastern Railroad Presidents Conference* v. *Noerr Motor Freight, Inc.*, 365 U.S. 127, 81 S. Ct. 523, 5 L. Ed. 2d 464 (1961).

decide whether [the trial court's] conclusions are legally and logically correct and find support in the facts that appear in the record. . . . *Gateway Co.* v. *DiNoia*, 232 Conn. 223, 229, 654 A.2d 342 (1995). On appeal, however, the burden is on the opposing party to demonstrate that the trial court's decision to grant the movant's summary judgment motion was clearly erroneous." (Internal quotation marks omitted.) *Kramer* v. *Petisi*, 53 Conn. App. 62, 66–67, 728 A.2d 1097, cert. denied, 249 Conn. 919, 733 A.2d 229 (1999).

A

We first consider the appropriate doctrine to apply to cases such as these, a question of first impression in our appellate courts. The defendants urge us to adopt, as the trial court did, the reasoning of a trio of federal antitrust cases, *California Motor Transport Co.* v. *Trucking Unlimited*, 404 U.S. 508, 92 S. Ct. 609, 30 L. Ed. 2d 642 (1972), *United Mine Workers* v. *Pennington*, 381 U.S. 657, 85 S. Ct. 1585, 14 L. Ed. 2d 626 (1965), *Eastern Railroad Presidents Conference* v. *Noerr Motor Freight, Inc.*, 365 U.S. 127, 81 S. Ct. 523, 5 L. Ed. 2d 464 (1961), and their progeny, collectively referred to as the *Noerr-Pennington* doctrine. In short, the *Noerr-Pennington* doctrine "shields from the Sherman [Antitrust] Act [15 U.S.C. § 1 et seq.] a concerted effort to influence public officials regardless of intent or purpose." *United Mine Workers* v. *Pennington*, supra, 670. The United States Supreme Court has reasoned that "it would be destructive of rights of association and of petition to hold that groups with common interests may not, without violating the antitrust laws, use the channels and procedures of state and federal agencies and courts to advocate their causes and points of view respecting resolution of their business and economic interests vis-a-vis their competitors." *California Motor Transport Co.* v. *Trucking Unlimited*, supra, 510–11.

The *Noerr-Pennington* doctrine has evolved from its antitrust origins to apply to a myriad of situations in which it shields individuals from liability for petitioning a governmental entity for redress. "[A]lthough the *Noerr-Pennington* defense is most often asserted against antitrust claims, it is equally applicable to many types of claims which [seek] to assign liability on the basis of the defendant's exercise of its first amendment rights." (Internal quotation marks omitted.) *Central Telecommunications, Inc.* v. *TCI Cablevision, Inc.*, 800 F.2d 711, 717 n.7 (8th Cir. 1986), cert. denied, 480 U.S. 910, 107 S. Ct. 1358, 94 L. Ed. 2d 528 (1987). For example, *Noerr-Pennington* has been recognized as a defense to actions brought under the National Labor Relations Act, 29 U.S.C. § 151 et seq.; *Bill Johnson's Restaurants, Inc.* v. *National Labor Relations Board*, 461 U.S. 731, 741, 103 S. Ct. 2161, 76 L. Ed. 2d 277 (1983); state law claims of tortious interference with business relations; *NAACP* v. *Claiborne Hardware Co.*, 458 U.S. 886, 913–15, 102 S. Ct. 3409, 73 L. Ed. 2d 1215 (1982); federal securities laws; *Havoco of America, Ltd.* v. *Hollobow*, 702 F.2d 643, 650 (7th Cir. 1983); and wrongful discharge claims. *San Filippo* v. *Bongiovanni*, 30 F.3d 424, 438–43 (3d Cir. 1994), cert. denied, 513 U.S. 1082, 115 S. Ct. 735, 130 L. Ed. 2d 638 (1995).

Although the *Noerr-Pennington* doctrine provides broad coverage to petitioning individuals or groups, its protection is not limitless. In *Eastern Railroad Presidents Conference* v. *Noerr Motor Freight, Inc.*, supra, 365 U.S. 144, the United States Supreme Court, albeit in dictum, established a "sham exception" to the general rule, stating: "There may be situations in which a publicity campaign, ostensibly directed toward influencing governmental action, is a mere sham to cover what is actually nothing more than an attempt to interfere directly with the business relationships of a competitor and the application of the Sherman Act would be justi-

fied." Id. In short, petitioning activity is not protected if such activity is a mere sham or pretense to interfere with no reasonable expectation of obtaining a favorable ruling. See *Litton Systems, Inc.* v. *American Telephone & Telegraph Co.*, 700 F.2d 785, 809–12 (2d Cir. 1983), cert. denied, 464 U.S. 1073, 104 S. Ct. 984, 79 L. Ed. 2d 220 (1984). In *Professional Real Estate Investors, Inc.* v. *Columbia Pictures Industries, Inc.*, 508 U.S. 49, 60–62, 113 S. Ct. 1920, 123 L. Ed. 2d 611 (1993), the court outlined a two part test to define sham litigation. First, the lawsuit must be objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits. Id., 60. Second, "the court should focus on whether the baseless lawsuit conceals an attempt to interfere directly with the business relationships of a competitor . . . through the use [of] the governmental process—as opposed to the outcome of that process—as an anticompetitive weapon . . . ." (Citations omitted; internal quotation marks omitted.) Id., 60–61. Essentially, then, a sham involves a defendant whose activities are not genuinely aimed at procuring favorable governmental action in any form. *Video International Production, Inc.* v. *Warner-Amex Cable Communications, Inc.*, 858 F.2d 1075, 1082 (5th Cir. 1988), cert. denied sub nom. *Dallas* v. *Video International Productions, Inc.*, 490 U.S. 1047, 109 S. Ct. 1955, 104 L. Ed. 2d 424 (1989).

Application of the *Noerr-Pennington* doctrine to the situation in this case—petitioning activity directed at local governments—already is well established. E.g., *Columbia* v. *Omni Outdoor Advertising, Inc.*, 499 U.S. 365, 379–84, 111 S. Ct. 1344, 113 L. Ed. 2d 382 (1991) (city council); *Juster Associates* v. *Rutland*, 901 F.2d 266, 270–72 (2d Cir. 1990) (city); *Racetrac Petroleum, Inc.* v. *Prince George's County*, 786 F.2d 202, 203 (4th Cir. 1986) (county zoning board); *Bob Layne Contractor, Inc.* v. *Bartel*, 504 F.2d 1293, 1296 (7th Cir. 1974) (city zoning board and council). Indeed, many of our

own trial courts have applied the *Noerr-Pennington* doctrine in their decisions. E.g., *Roncari Development Co.* v. *GMG Enterprises, Inc.*, 45 Conn. Sup. 408, 414, 718 A.2d 1025 (1997), citing *Connecticut National Bank* v. *Mase*, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 269180 (January 31, 1991); *Abrams* v. *Knowles*, Superior Court, judicial district of New London at Norwich, Docket No. 95287 (December 4, 1990) (3 Conn. L. Rptr. 9); *Yale University School of Medicine* v. *Wurtzel*, Superior Court, judicial district of New Haven, Docket No. 275314 (November 9, 1990) (2 Conn. L. Rptr. 813).

In addition, the United States Court of Appeals for the Second Circuit has predicted that Connecticut's appellate courts probably would apply the *Noerr-Pennington* doctrine and the accompanying sham exception when given the opportunity to do so. "We believe that Connecticut's courts would be guided by the strong suggestions from the federal courts that imposing liability for the act of filing a non-sham lawsuit would present serious constitutional problems, and would construe Connecticut law to avoid those problems. Especially since *Noerr-Pennington's* statutory exemption is defined in terms of first amendment activity, we are confident that Connecticut's courts would carve out a similar exception to [the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq.] and the common law, whether or not they believed that they were required to do so by the Constitution." *Suburban Restoration Co.* v. *ACMAT Corp.*, 700 F.2d 98, 102 (2d Cir. 1983); see also *T.F.T.F. Capital Corp.* v. *Marcus Dairy, Inc.*, 33 F. Sup. 2d 122, 125–26 (D. Conn. 1998). We agree.

The *Noerr-Pennington* doctrine subordinates antitrust considerations and commercial expediency to the constitutional rights of individuals and groups to petition their government. Furthermore, failure to apply

the *Noerr-Pennington* doctrine aggressively may create a "chilling effect" on the first amendment right to petition in zoning and other matters. See *Ottensmeyer* v. *Chesapeake & Potomac Telephone Co.*, 756 F.2d 986, 993–94 (4th Cir. 1985). Indeed, such a chilling effect can be a virtual deep freeze when individual citizens not versed in the legal system and without financial resources do not exercise potentially meritorious legal challenges for fear of costly and protracted, retributive litigation from opponents.

The *Noerr-Pennington* doctrine is a well established body of law applicable to a wide variety of situations involving petitioning activity, including local zoning and other municipality matters. Seventeen years later, we fulfill the Second Circuit's prophecy and adopt the *Noerr-Pennington* doctrine and its accompanying sham exception as the applicable analysis for cases such as this one.[5]

## B

For the foregoing reasons, we now apply the *Noerr-Pennington* doctrine to this case. The plaintiffs claim

___

[5] We note that the *Noerr-Pennington* doctrine is similar to existing law in Connecticut governing the torts of interference with business relations and vexatious litigation. Interference with contractual relations and vexatious litigation, which the plaintiffs alleged, are closely intertwined in this case, as tortious interference with contractual relations is predicated on the facts underlying the vexatious litigation claim. See *Blake* v. *Levy*, 191 Conn. 257, 261–66, 464 A.2d 52 (1983). For a vexatious litigation claim to succeed, "it is necessary to prove want of probable cause, malice and a termination of suit in the plaintiff's favor. . . . Probable cause is the knowledge of facts sufficient to justify a reasonable person in the belief that there are reasonable grounds for prosecuting an action. . . . Malice may be inferred from lack of probable cause. . . . The want of probable cause, however, cannot be inferred from the fact that malice was proven. . . . The existence of probable cause is an absolute protection . . . and what facts, and whether particular facts, constitute probable cause is always a question of law." (Citations omitted; internal quotation marks omitted.) *Vandersluis* v. *Weil*, 176 Conn. 353, 356, 407 A.2d 982 (1978); *Norse Systems, Inc.* v. *Tingley Systems, Inc.*, 49 Conn. App. 582, 594, 715 A.2d 807 (1998).

that the defendants' actions were mere sham proceedings and invoke *Noerr-Pennington*'s sham exception. Applying the concepts previously discussed, we conclude that the court properly determined that there were no disputed facts, and that as a matter of law the defendants' actions were not objectively baseless and were not a sham that would strip away the protection of the *Noerr-Pennington* doctrine.

Activities found to be a sham involve actions rife with abusive intent and absent any indicia of success. Factors present in sham litigation include, but are not limited to, the presence of repetitive litigation (although one action may constitute a sham under certain conditions), deliberate fraud, supplying false information, and whether lower courts have stated or implied that the action is frivolous or objectively baseless and whether they have dismissed it out of hand. *Liberty Lake Investments, Inc.* v. *Magnuson,* 12 F.3d 155, 158–59 (9th Cir. 1993), cert. denied, 513 U.S. 818, 115 S. Ct. 77, 130 L. Ed. 2d 32 (1994); *Litton Systems, Inc.* v. *American Telephone & Telegraph Co.,* supra, 700 F.2d 810; see generally *California Motor Transport Co.* v. *Trucking Unlimited,* supra, 404 U.S. 513.

For example, in *Landmarks Holding Corp.* v. *Bermant,* 664 F.2d 891, 892 (2d Cir. 1981), real estate developers appealed from a summary judgment rendered against them in their action alleging that competitors and local property owners had engaged in sham litigation to prevent the developers from building a regional shipping center in Hamden. The Second Circuit noted that the developers had alleged numerous activities that, if proven, would support the conclusion that the defendants actions were nothing more than a sham. Id., 896. For example, the defendants appealed to the Connecticut Court of Common Pleas and to our Supreme Court from each decision of the Hamden planning and zoning commission, knowing that they lacked

standing to do so. Id. Each such appeal was dismissed. The defendants deliberately protracted the proceedings by misrepresenting to the chief justice of our Supreme Court that they needed extra time to have the record printed. Id. Although a letter from the counsel for certain of the defendants stated that the defendants sought to expedite the appeal, a copy of the letter produced from the defendants' files bore on it, in the handwriting of one defendant, the words, "[t]his is purely bull to show that we are not trying to delay proceedings." Id., 894. In addition, an attorney representing competitors and local property owners failed to communicate a settlement offer from the developers to the local property owners. Id., 896. Acceptance of the offer would have removed a major obstacle to the rapid resolution of certain appeals then remaining before our Supreme Court. Id. "In sum, by the bringing of numerous meritless appeals, by deliberate delay in the prosecution of those appeals, by the solicitation and subsidization of meritless litigation by the landowners, and by their attorney's failure to convey a settlement offer . . . [the defendants] successfully stalled plaintiffs' applications for zoning changes on the . . . property for five years. This delay ultimately forced the plaintiffs to abandon their venture." Id., 896. The Second Circuit, concluding that the defendants had no reasonable basis for their appeals and had engaged in subterfuge, reversed the District Court's grant of summary judgment in favor of the defendants. Id., 892.

Similar chicanery occurred in *Pound Hill Corp.* v. *Perl*, 668 A.2d 1260, 1262 (R.I. 1996), in which the plaintiff developer applied for a zone change for property it had contracted to purchase. The zone change was approved, and the plaintiff became the owner of the property. Id. At that point, one of the defendants, a religious organization that earlier had sought to purchase the property, began a vigorous campaign to frus-

trate the plaintiff's efforts to obtain town council approval. Id. The organization claimed that the plaintiff had not obtained the requisite three-fifths vote required to rezone the parcel, even though the council had voted by four-fifths of its number to approve the zoning change. Id. The organization repeated this challenge, which was again rejected. The organization also filed a baseless action in the Rhode Island Superior Court and ignored procedural requirements of the judicial process. Id. Responding to those efforts, the plaintiff filed an action alleging abuse of process and tortious interference with prospective contractual relations, and the trial court granted summary judgment in favor of the defendants. Id., 1261. The plaintiff appealed. Id.

In concluding that summary judgment was inappropriate, the Rhode Island Supreme Court stated: "A trier of fact might . . . determine that the filing of an action in the [Rhode Island] Superior Court to enjoin the . . . Town Council from meeting was objectively baseless. . . . A trier of fact might determine that filing an action in the [Rhode Island] Superior Court after the time (forty days) required by [Gen. Laws] § 45-5-16 was similarly objectively baseless, particularly in view of the fact that no attempt was made to meet the appellate procedural requirements. A trier of fact might determine that the appeal from the planning-board approval of Pound Hill's plat was also objectively baseless since no substantive ground for such an appeal was presented to the zoning board of review . . . ." Id., 1264. Other state and federal cases finding that a sham was established or supportable reveal analogous behavior. See annot., 'Sham' Exception to Application of *Noerr-Pennington* Doctrine, Exempting From Federal Antitrust Laws Joint Efforts to Influence Governmental Action, 71 A.L.R. Fed. 723 (1985).

The level of artifice and frivolousness found in *Pound Hill Corp.*, *Landmarks Holding Corp.* and other cases

does not exist in this case. An examination of the record reveals an attempt, however persistent, by the defendants to use whatever lawful means were at their disposal to challenge the plaintiffs' activities on substantive grounds. Indeed, the conduct of parties in other cases decided by the Rhode Island Supreme Court in which the sham exception was not applied is analogous to the conduct of the parties in this case.

For instance, in *Hometown Properties, Inc.* v. *Fleming*, 680 A.2d 56, 58–59 (R.I. 1996), the plaintiff owners of a landfill brought an action against the defendant, a local resident, because of letters the defendant authored to state and federal officials regarding the plaintiffs' landfill activities. Notwithstanding the plaintiffs' demand to do so, the defendant did not retract the substance of the letters. Id., 59. The Rhode Island Supreme Court applied the *Noerr-Pennington* doctrine and directed the trial court on remand to render a summary judgment in favor of the defendant. Id., 63–64. The court stated that "[i]n her affidavit, [the defendant] presented detailed averments that her statements were based upon various scientific studies and reports. [The plaintiffs] submitted no opposing affidavit or other evidence to challenge [the defendant's] statements but relied solely on the assertions in [their] pleadings. On the basis of the record before us, it is clear that [the defendant] did not engage in sham activity that was objectively baseless in the sense that no reasonable person exercising the right of speech or petition could realistically expect success in procuring [favorable] government action, result, or outcome." (Internal quotation marks omitted.) Id., 64.

In *Cove Road Development* v. *Western Cranston Industrial Park Associates*, 674 A.2d 1234 (R.I. 1996), the defendants, some of whom were landowners whose properties abutted a proposed development and others who were owners in a nearby industrial park, brought

an action against the plaintiff developer, alleging that a zoning amendment adopted in the plaintiff's favor violated the town's zoning plan and constituted illegal spot zoning. Id., 1235–36. The defendants ultimately lost at trial, appealed, and their case was dismissed by the Rhode Island Supreme Court. Id., 1239.

The plaintiff then brought an action against the defendants, alleging that the zoning appeal constituted an abuse of process and malicious prosecution. Id., 1235. The Rhode Island Supreme Court affirmed the trial court's granting of a summary judgment in favor of the defendants. Id., 1239. The court applied the *Noerr-Pennington* doctrine and found that the defendants' original action was not a sham. Id. The court reasoned that "[a]t trial, [the defendants] presented expert and lay testimony in support of [their] position that the development of high-density residential housing adjacent to an industrial park was inconsistent with the city's comprehensive plan and could result in nearby residential abutters complaining of industrial activities. The trial justice clearly found this evidence to be of some significance, as he refused to dismiss [the defendants'] case. Moreover, in his eleven-page decision, the trial justice addressed the substance of [the defendants'] appeal at length, but nowhere in the decision did the trial justice indicate in any way that he viewed the appeal as frivolous or lacking merit." Id.

We now apply the previously stated principles and examine separately two events: First, the various challenges made by the defendants to the plaintiffs' zoning changes and permit requests; second, the defendants' attempt to rezone the plaintiffs' property.

1

As previously stated, in 1987 and 1988 the plaintiffs applied for zone changes to their property. The defendants opposed those changes and pursued available

appellate remedies in the Superior Court and Appellate Court, which were unsuccessful. In 1990, the plaintiffs applied to the Torrington inland wetlands commission for a building permit, which was approved. The defendants again opposed the changes and pursued appellate remedies, which were unsuccessful.

The defendants' opposition to the plaintiffs' zoning requests and the defendants' subsequent appeals were legally available to the defendants and followed applicable judicial procedure. Merely because those attempts failed does not in itself make them baseless acts. A failure of the challenged action is only one factor in determining whether an action is a sham. See *Sunergy Communities, Inc.* v. *Aristek Properties, Ltd.*, 535 F. Sup. 1327, 1331 (D. Colo. 1982). "[W]hen the . . . defendant has lost the underlying litigation, a court must resist the understandable temptation to engage in post hoc reasoning by concluding that an ultimately unsuccessful action must have been unreasonable or without foundation." (Internal quotation marks omitted.) *Professional Real Estate Investors, Inc.* v. *Columbia Pictures Industries, Inc.*, supra, 508 U.S. 60 n.5; see also *Liberty Lake Investments, Inc.* v. *Magnuson*, supra, 12 F.3d 158–59. Previous decisions by other courts reveal that the defendants' challenges possessed at least some merit. For example, the defendants' challenge to the commission's approval of zoning changes for the plaintiffs' property that were requested by the plaintiffs was addressed on its merits on appeal to the Superior Court. *Consolini* v. *Planning & Zoning Commission*, Superior Court, judicial district of Litchfield, Docket No. 48806 (September 17, 1990). The defendants' subsequent challenge to the commission's conclusion that the plaintiffs did not require additional permits to build the plaintiffs' proposed mall was addressed on its merits in this court. *Consolini* v.

*Inland Wetlands Commission,* 29 Conn. App. 12, 15–16, 612 A.2d 803 (1992).

While not ultimately successful or of overwhelming strength, those zoning challenges were not so objectively baseless that no reasonable litigant could reasonably expect success on the merits, nor did the plaintiffs in *Consolini* v. *Inland Wetlands Commission,* supra, 29 Conn. App. 12, ignore procedure or misrepresent facts. We therefore conclude that those actions do not contribute to the conclusion that the defendants in this case have committed a sham.

2

Similarly, when the defendants "took the offense" and, in 1992, applied to change the plaintiffs' property from restricted commercial and industrial to industrial zoning, their petitioning did not constitute a sham. The defendants presented alternate proposals for an industrial park and a letter citing traffic concerns supporting the zone change. The commission denied the defendants' application by a four to one vote. Furthermore, when the denial of change was appealed to the Superior Court, the trial court addressed the issue on its merits, did not call the appeal baseless and did not reject the issue of the zone change out of hand. *Rizzo* v. *Planning & Zoning Commission,* Superior Court, judicial district of Litchfield, Docket No. 60046 (March 3, 1993).

The plaintiffs make much of the fact that the defendants' attempt to rezone the plaintiffs' property is not explicitly authorized by statutory or common law. The mere fact that the defendants' attempt to rezone the property has not been explicitly authorized, however, does not render it a baseless act. Cf. *Smith* v. *Garretto,* 147 F.3d 91, 94 (2d Cir. 1998) (government officials do not lose qualified immunity because of absence of any authority available to them one way or the other). Furthermore, the defendants' attempt to rezone is not

totally devoid of analogous statutory or common law backing.[6] In *Ghent* v. *Zoning Commission*, 220 Conn. 584, 588–93, 600 A.2d 1010 (1991), our Supreme Court gave a municipal mayor standing to seek a zone change of property he did not own. See generally *Winslow* v. *Zoning Board*, 143 Conn. 381, 386–87, 122 A.2d 789 (1956). Furthermore, General Statutes § 22a-19 authorizes an individual or entity who has no relation to a particular property to intervene regarding that property "in certain proceedings or judicial review thereof to challenge harm to the environmental public trust." *Hyllen-Davey* v. *Plan & Zoning Commission*, 57 Conn. App. 589, 595, 749 A.2d 682, cert. denied, 253 Conn. 926, 754 A.2d 796 (2000); see *Red Hill Coalition, Inc.* v. *Conservation Commission*, 212 Conn. 710, 715, 563 A.2d 1339 (1989).

On the basis of the exhibits, affidavits and admissions in the record, the court properly found that there was no issue of material fact and that, as a matter of law, the sham exception did not apply. Nothing in the record reveals that these requests are baseless nor were they considered baseless by the commission or the courts. The defendants' attempt to rezone the plaintiffs' property was undertaken with factual and legal support, as set forth in the court's memorandum of decision. The defendants' efforts in thwarting the plaintiffs' building plans no doubt were aggressive. They were not so baseless, however, as to sink to the level of a sham, as was the situation in *Pound Hill Corp.*, *Landmarks Holding Corp.* and other cases.[7]

---

[6] In concluding that the defendants' tactics were not baseless for purposes of the *Noerr-Pennington* doctrine, we do not mean to imply any approval of the ultimate merits of the defendants' actions.

[7] Finally, we note that a party's use of its economic powers in an attempt to stifle individual citizens' use of valid governmental processes by threat of expensive litigation potentially constitutes a violation of CUTPA, which is expressly modeled on § 5 (a) (1) of the Federal Trade Commission Act, 15 U.S.C. § 45 (a) (1). *Larsen Chelsea Realty Co.* v. *Larsen*, 232 Conn. 480, 498, 656 A.2d 1009 (1995). Further, CUTPA directs state courts to be guided by federal interpretations of the federal act in construing the state statute.

As the court correctly stated in its memorandum of decision: "The undisputed facts, including the promulgation of a master plan, the subsequent downsizing of the plaintiffs' site and the engineer's opinion on traffic impact, show that the defendants had a reasonable, good faith belief in the facts supporting the zone change application and the validity of that claim. . . . [B]ased upon these undisputed facts and lack of any other material facts, the court [cannot] find as a matter of law that the defendants' actions were objectively baseless. . . . Once denied by the zoning commission, the defendants had probable cause to appeal that denial to the Superior Court. Their motives behind these actions are irrelevant to the issue of probable cause." (Citations omitted.) We conclude that the court properly determined there was no genuine issue of material fact and that the defendants are entitled to judgment as a matter of law. The defendants' actions are not objectively baseless and not a mere sham.[8] We conclude that the court properly granted the defendants' motion for summary judgment and rendered judgment in favor of the defendants.

## II

The plaintiffs also contend that the court improperly placed the burden on them to show that the defendants

General Statutes § 42-110b (b). Federal courts interpreting the Federal Trade Commission Act have applied the *Noerr-Pennington* doctrine. *Federal Trade Commission* v. *Superior Court Trial Lawyers Assn.*, 493 U.S. 411, 418–19, 110 S. Ct. 768, 107 L. Ed. 2d 851 (1990); *Rodgers* v. *Federal Trade Commission*, 492 F.2d 228, 229 (9th Cir.), cert. denied, 419 U.S. 834, 95 S. Ct. 60, 42 L. Ed. 2d 60 (1974); see also *Suburban Restoration Co.* v. *ACMAT Corp.*, supra, 700 F.2d 101–102 (interpreting CUTPA); J. Sills, Comment, "SLAPPs (Strategic Lawsuits Against Public Participation): How Can the Legal System Eliminate their Appeal?" 25 Conn. L. Rev. 547, 577–78 (1993).

[8] Because we find that the petitioning was not objectively baseless, we need not consider the second prong of the *Noerr-Pennington* sham exception, namely, whether the defendants' actions constituted an attempt to interfere with the plaintiffs through abuse of the petitioning process. "Only if challenged litigation is objectively meritless may a court examine the litigant's subjective motivation." *Professional Real Estate Investors, Inc.* v. *Columbia Pictures Industries, Inc.*, supra, 508 U.S. 60.

had no authority to apply for a zone change. The plaintiffs point to the court's statement that "the plaintiffs have provided no authority, either statutory or regulatory, to state that the defendants were prohibited from applying for a zone change for property in their neighborhood." We disagree.

The court stated in its memorandum of decision that "the party seeking summary judgment has the burden of showing the nonexistence of any material fact"; (internal quotation marks omitted), quoting *Home Ins. Co.* v. *Aetna Life & Casualty Co.*, 235 Conn. 185, 202, 663 A.2d 1001 (1995); and noted that the plaintiffs had provided nothing more than the bare assertion that the defendants were prohibited from applying for a zone change. It is well settled that such bare assertions by the nonmovant are not enough to withstand summary judgment. "Although the party seeking summary judgment has the burden of showing the nonexistence of any material fact . . . [the nonmovant] must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue. . . . It is not enough, however, for the opposing party merely to assert the existence of such a disputed issue. Mere assertions of fact . . . are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court." (Internal quotation marks omitted.) Id. Thus, the court's statement on this issue was not improper.

The judgment is affirmed.

In this opinion the other judges concurred.