[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (#163)
The facts underlying this case arise from the proposed development of real estate located in Clinton, Connecticut, and the opposition by the plaintiff to that development.
The defendant Chelsea G.C.A. Realty Partnership, LP (Chelsea), is the developer of a 287,000 square foot manufacturers' outlet center known as the Clinton Crossing Factory Stores in Clinton, Connecticut. The plaintiff is an individual resident of Clinton who opposed the development of the Clinton Crossing Factory Stores.
Chelsea believed that the plaintiff Walter J. Lewis (Lewis) was interested in the development of a competitor's outlet center in Westbrook, Connecticut, on property previously owned by Lewis, and that Lewis' involvement in state court litigation seeking to prevent the development of the Clinton Factory Stores was unlawful. Chelsea sought advice of independent counsel (David L. Belt) as to how it could proceed against Lewis in connection with Lewis' concerted litigation efforts opposing the development of the Connecticut Factory Stores.
Belt learned soon after he was retained that Lewis had voluntarily petitioned for bankruptcy in September, 1995. He advised Chelsea that if it wished to seek relief from Lewis' participation in the state court litigation, it would have to do so by filing an adversary proceeding in the bankruptcy court by January 2, 1996.
Accordingly, pursuant to § 523(a) (6) of Title 11 of the Bankruptcy Code, Chelsea filed its complaint in Lewis' bankruptcy case on January 2, 1996, admittedly to challenge Lewis' state court activities on substantive grounds. (Chelsea's memorandum of law in support of motion for summary judgment, p. 20.)[1] That adversary proceeding was ultimately withdrawn by Chelsea on the eve of trial. It was Chelsea's CT Page 1096 filing of the adversary proceeding in the bankruptcy case that precipitated the filing of Lewis' complaint in this case.
Lewis brought the current action against Chelsea in three counts: count one alleges that Chelsea's conduct relating to the filing of the adversary proceeding violated the Connecticut Unfair Trade Practices Act (CUTPA); count two asserts that filing and later dismissing the adversary proceeding supports a claim for vexatious litigation pursuant to General Statutes § 52-568; and count three incorporates counts one and two and claims damages under a vexatious related CUTPA violation theory.[2]
Chelsea answered the complaint and asserted fourteen special defenses.
Chelsea has moved for summary judgment on the following grounds: (1) its activities were protected as a matter of law by the Noerr-Pennington
doctrine; (2) as to the vexatious litigation claim, Chelsea had probable cause to file an adversary proceeding under § 523(a) (6) of Title 11; (3) as to the vexatious litigation claim, Chelsea as a matter of law has established the elements of its advice of counsel special defense; (4) additionally, as to the vexatious related CUTPA claim, Chelsea argues that the plaintiff's state law claims are preempted by federal bankruptcy law; and (5) Chelsea argues that the vexatious related CUTPA claim should be dismissed for the same reasons as the vexatious litigation count. Lewis has opposed the motion for summary judgment.
"Pursuant to Practice Book § 17-49, summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." AmocoOil Co. v. Liberty Auto Electric Co., 262 Conn. 142, 147-48,___ A.2d ___ (2002).
 I. Violation of CUTPA
Chelsea moves for summary judgment on count one of the amended complaint on the basis that it had probable cause for filing its adversary action in the bankruptcy case and therefore is shielded from liability under CUTPA pursuant to the Noerr-Pennington doctrine.[3]
"The Noerr-Pennington doctrine has evolved from its antitrust origins to apply to a myriad of situations in which it shields individuals from liability for petitioning a governmental entity for redress. Although theNoerr-Pennington defense is most often asserted against antitrust claims, it is equally applicable to many types of claims which seek to assign liability on the basis of the defendant's exercise of its first amendment rights. (Citations omitted; internal quotation marks omitted.) Zeller v. Consolini, 59 Conn. App. 545, 551, 758 A.2d 376
CT Page 1097 (2000)
The Noerr-Pennington shield is not limitless. It is subject to an exception for sham litigation. In Professional Real Estate Investors,Inc. v. Columbia Pictures Industries, Inc., 508 U.S. 49, 60-62,113 S.Ct. 1920,123 L.Ed.2d 611 (1993), the court outlined a two-part test to define sham litigation: (1) the lawsuit must be objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits; and (2) the court should focus on whether the baseless lawsuit conceals an attempt to interfere directly with the business relationships of a competitor. Zeller v. Consolini, supra,59 Conn. App. 552, quoting Professional Real Estate Investors, Inc. v.Columbia Pictures Industries, Inc., 508 U.S. 60-61. "Essentially, then, a sham involves a defendant whose activities are not genuinely aimed at procuring favorable governmental action in any form." Zeller v.Consolini, supra, 59 Conn. App. 552, quoting Video InternationalProduction, Inc. v. Warner-Amex Cable Communications, Inc., 858 F.2d 1075,1082, (5th Cir. 1988), cert. denied, 490 U.S. 1047, 109 S.Ct. 1955,104 L.Ed.2d 424 (1989).
Lewis alleges in the first count of his amended complaint that Chelsea's adversary proceeding brought against him in the bankruptcy court was a quintessential SLAPP (strategic litigation against public participation) lawsuit. In the more usual context, Noerr-Pennington is applied to situations in which a developer such as Chelsea brings litigation against individuals who are fighting zoning and land use decisions. The SLAPP lawsuits by the developers against the individuals are dismissed under Noerr-Pennington to protect the individuals' first amendment rights. In this case, the developer seeks to applyNoerr-Pennington to dismiss the CUTPA claim responsive to its alleged SLAPP suit.
The court is not aware of authority, nor does Lewis cite any, which indicates that Noerr-Pennington is unavailable to a developer in this situation. Lewis does argue that the Noerr-Pennington doctrine is invoked to preclude developers' claims, thus evidencing the sham nature of the claims by this developer against him.
The court would agree, based on the allegations of Lewis' affidavit filed in support of his opposition to the motion for summary judgment, that it is likely that Chelsea's complaint against him would have been subject to dismissal pursuant to application of the Noerr-Pennington
doctrine. That conjecture, however, does not resolve Chelsea's claim that it filed the adversary proceeding only after establishing by independent counsel that it had probable cause for doing so. As noted in Zeller v.CT Page 1098Consolini, supra, 59 Conn. App. 554 n. 5:
 [T]he Noerr-Pennington doctrine is similar to existing law in Connecticut governing the torts of interference with business relations and vexatious litigation. Interference with contractual relations and vexatious litigation . . . are closely intertwined . . . as tortious interference with contractual relations is predicated on the facts underlying the vexatious litigation claim. . . . For a vexatious litigation claim to succeed, it is necessary to prove want of probable cause, malice and a termination of suit in the plaintiff's favor. . . . Probable cause is the knowledge of facts sufficient to justify a reasonable person in the belief that there are reasonable grounds for prosecuting an action. . . . The existence of probable cause is an absolute protection . . . and what facts . . . constitute probable cause is always a question of law.
(Citations omitted; internal quotation marks omitted.) Id. The application of Connecticut vexatious litigation law and the sham exception to the Noerr-Pennington doctrine both result in the finding of probable cause as dispositive of the issues of whether the litigation was vexatious or sham.
Chelsea bases its probable cause claim primarily on the affidavit of David L. Belt, an attorney who concluded prior to the initiation of Chelsea's claims against Lewis, that
probable cause existed for Chelsea to assert a claim against Walter Lewis for violation of the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110a, et seq., both directly and as a co-conspirator with an aider and abettor of Law Realty and Chelsea's competitor in connection with the instigation and financial support of the P Z Litigation and the ZBA Litigation brought in the name of the Named Plaintiffs which neither Walter Lewis, Law Realty nor Chelsea's competitor had standing to bring. Specifically, I concluded that even if a lawsuit subsequently proved meritorious, it would still be "sham" litigation not protected by the Noerr-Pennington doctrine if a party who himself lacked standing indirectly aided others with standing to bring an action against another and CT Page 1099 there was probable cause to believe that this claim could be asserted despite the appeal by the Named Plaintiffs of the court's dismissal of the P Z Litigation and ZBA Litigation.
Affidavit of David L. Belt executed on October 1, 2002, paragraph 10. Belt indicated that his opinion was based on the belief that 1) Lewis had formerly owned the property where a competitor's manufacturing outlet center was being built in Westbrook, Connecticut; 2) Lewis was not a named plaintiff in either the ZBA litigation or the P Z litigation and probably did not himself have any claim of standing to bring either appeal; 3) Lewis had solicited persons owning property adjacent to the Chelsea project to join in an appeal for which Lewis had advanced the sum of $5,000 and retained his regular lawyer to bring the appeal; 4) the lawyer representing plaintiffs in the zoning appeal, namely, Attorney Kraus, had represented Lewis in at least eight prior lawsuits between 1991 and 1995; and 5) Lewis had transferred property in Westbrook, Connecticut, to his daughters Robin Lewis and Lisa Lewis doing business as Law Realty, which entity subsequently sold the property to a competitor of Chelsea, which was seeking to develop a competing manufacturer's outlet center in Westbrook, Connecticut.
These facts are not disputed by Lewis. (See affidavit of Walter J. Lewis executed on November 25, 2002.) The court finds that these undisputed facts establish as a matter of law that Chelsea had probable cause to bring a CUTPA claim against Lewis. As a matter of law, the court determines that these facts are sufficient to constitute probable cause justifying a reasonable person in the belief that there were reasonable grounds for prosecuting an action. Id. Count one is subject to summary judgment in favor of Chelsea based upon application of theNoerr-Pennington doctrine and/or Connecticut law with respect to vexatious litigation.
 II. Vexatious Litigation and Vexatious Related Violation of CUTPA
Implicit in the charges asserted in counts two and three of the amended complaint is the belief that this court has subject matter jurisdiction to determine whether the filing of an adversary action in the bankruptcy court constitutes vexatious litigation. This jurisdictional issue has been considered in the federal court. In Gonzales v. Parks, 830 F.2d 1033
(9th Cir. 1987), a Chapter 11 debtor filed an adversary proceeding seeking relief from a creditor's state court action claiming that the bankruptcy filing constituted abuse of process. The Gonzales case arose from the debtor's adversary action, but similar analysis may be applied CT Page 1100 to a creditor asserting its right to file an adversary proceeding in federal court. The Gonzales court held that
 [f]ilings of bankruptcy petitions are a matter of exclusive federal jurisdiction. State courts are not authorized to determine whether a person's claim for relief under a federal law, in a federal court, and within that court's exclusive jurisdiction, is an appropriate one. . . .
 That Congress' grant to the federal courts of exclusive jurisdiction over bankruptcy petitions precludes collateral attacks on such petitions in state courts is supported by the fact that remedies have been made available in the federal courts to creditors who believe that a filing is frivolous. Debtors filing bankruptcy petitions are subject to the requirement of good faith . . . and violations of that requirement can result in the imposition of sanctions. Congress' authorization of certain sanctions for the filing of frivolous bankruptcy petitions should be read as an implicit rejection of other penalties, including the kind of substantial damage awards that might be available in state court tort suits. Even the mere possibility of being sued in tort in state courts could in some instances deter persons from exercising their rights in bankruptcy. In any event, it is for Congress or the federal courts, not the state courts, to decide what incentives and penalties are appropriate for use in connection with the bankruptcy process and when those incentives or penalties shall be utilized.
(Citations omitted.) Id., 1035-36. Also see Idell v. Goodman,224 Cal.App.3d 262 (1990). Thus, Lewis' assumption that he may collaterally attack in state court what he believes to have been vexatious litigation filed against him in the bankruptcy court is contrary to federal law. Bankruptcy Rule 9011 authorizes the imposition of costs and attorney's fees as sanctions when any bankruptcy filing is made in bad faith. Lewis had a remedy available to him in bankruptcy court to test the validity of Chelsea's adversary proceeding.
This court is preempted by federal law from acting on a claim intended to sanction a party for its participation in a bankruptcy proceeding. Accordingly, the motion for summary judgment on the vexatious litigation CT Page 1101 and vexatious related CUTPA claims asserted in counts two and three of the amended complaint is granted because those claims are preempted by federal law.
 Conclusion
The motion for summary judgment (#163) is granted as to all counts of plaintiff's complaint.
 ___________________, J. ROBERT F. McWEENY