DECISION
This matter is before the Court for decision on the Motion of Defendants American Condominium Association, Inc., Natalie D. Volpe, Mary C. Connolly, Diana S. Vanden Dorpel, Edmond F. McKeown and Sandra M. Conca (Defendants) for Partial Summary Judgment on Count II and Count III of Plaintiff Bennie Sisto, as Trustee of the Goat Island Realty Trust's (Plaintiff) Complaint pursuant to Rule 56(b) of the Superior Court Rules of Civil Procedure. As grounds for this motion, Defendants assert that the Rhode Island G.L. 1956 § 9-33-1 ("Anti-SLAPP Statute) provides Defendants immunity against Plaintiff's allegations and there are no genuine issues of material fact.
 Facts and Travel
This action involves a proposed expansion of Plaintiff's condominium unit located on Goat Island in Newport, Rhode Island, within the Goat Island South Condominium community ("GIS"). GIS was originally created in 1988 by a Master Declaration of Condominium. GIS is comprised of three residential areas with a total of 154 units: 19 separate stand-alone townhouse-type residence units in the Harbor Houses Condominium, governed by the Harbor Houses *Page 2 
Condominium Association ("Harbor Houses"); 46 residence units in the America Condominium, governed by the America Condominium Association ("America"); and 89 residence units in the Capella South Condominium, governed by the Capella South Condominium Association ("Capella"). Plaintiff owns Harbor Houses Unit #1, a stand-alone townhouse unit (the "Unit") that is surrounded by land that § 2.3 and § 2.5 of the Harbor Houses Declaration designate as a Limited Common Element.[1]
On or about October 19, 2006, Plaintiff filed an application with the Coastal Resources Management Commission (the "CRMC") to demolish the existing Unit and construct a new and larger single-family dwelling Unit. The CRMC requires applicants to provide "a letter from the local tax assessor stating ownership of the property." On January 16, 2007, Defendants submitted to the CRMC a letter containing a substantive objection to the Plaintiff's application. This objection stated that (1) Plaintiff did not own the land it proposed to expand upon; (2) that Plaintiff's proposed expansion failed to comply with the CRMC setback regulations; and (3) that a Rhode Island Supreme Court decision had held that the condominium common areas are commonly owned by all 154 unit owners.
Plaintiff proceeded with his CRMC application and on October 7, 2007, re-submitted plans for his proposed expansion. On November 26, 2007, counsel for America and Capella submitted to the CRMC a second letter containing a substantive objection, which declared that Plaintiff was not the owner of the land upon which it intended to expand upon. Unsatisfied with Plaintiff's ownership interest in the land, the CRMC refused to process Plaintiff's application. *Page 3 
Plaintiff therefore filed suit, asking this Court for a declaratory judgment that he has sufficient right and title in the land to file his application with the CRMC (Count I), slander of title (Count II), and breach of contract (Count III). Defendants presently move for summary judgment on Counts II and III, claiming that Counts I and III are prohibited by the Rhode Island anti-SLAPP statute, Section § 9-33-1 et. seq.
 Analysis
Rhode Island's anti-SLAPP statute ensures that "[a] party's exercise of his or her right of petition or of free speech under the United States or Rhode Island constitutions in connection with a matter of public concern" is "conditionally immune from civil claims, counterclaims, or cross-claims." Section 9-33-2(a). The statute was enacted because the legislature disfavors lawsuits that are brought "primarily to `chill the valid exercise of the constitutional rights or freedom of speech' by persons making public statements in connection with an issue of public concern."Global Waste Recycling, Inc. v. Mallette,762 A.2d 1208, 1213 (R.I. 2008) (quoting § 9-33-1)). The anti-SLAPP statute "not only encourages but also protects `robust discussion of issues of public concern' in the `public fora.'" Id. Thus, the Court must first determine if Defendants' speech is protected by the anti-SLAPP statute. The anti-SLAPP defines "a party's exercise of its right of petition or of free speech" as:
 "[A]ny written or oral statement made before or submitted to a legislative, executive, or judicial body, or any other governmental proceeding; any written or oral statement made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other governmental proceeding; or any written or oral statement made in connection with an issue of public concern." Section 9-33-2(e).
The anti-SLAPP statute also applies to issues of public concern before governmental administrative agencies. HometownProperties v. Fleming, 680 A.2d 56 (R.I. 1996). The United *Page 4 
States Supreme Court has defined issues of public concern as any issue "fairly considered as relating to any matter of political, social, or other concern to the community. . . ." Connick v.Myers, 461 U.S. 138, 146 (1983).
Our Supreme Court has interpreted the anti-SLAPP statute in two cases that are factually similar to the instant case. InHometown Properties, the defendant, a North Kingston resident, participated in a DEM meeting regarding the plaintiff landfill owner's alleged ground water contamination. Id. at 58. Thereafter, the defendant mailed follow-up correspondence to the state and federal officials criticizing the landfill's practices.Id. at 58-59. The plaintiff landfill asked defendant to retract the statements; when defendant refused, the landfill filed suit. Id. at 59. Our Supreme Court ultimately held, however, that defendant's actions were protected by the anti-SLAPP statute and were not a "sham."
Similarly, in Global Waste Recycling, Inc. v. Mallette,762 A.2d 1208 (R.I. 2000), defendants complained to a local newspaper about alleged environmental problems with the plaintiff recycling plant. Id. at 1209. The plaintiff recycling plant brought suit, and our Supreme Court affirmed the Superior Court's grant of summary judgment to the defendant.Id. at 1214. Our Supreme Court held that the anti-SLAPPP statute protected defendant's actions because the issue was one of public interest and was not a "sham." Id. at 1213-14.
Here, Defendants' submitted letters to an administrative party, the CRMC; such actions constitute a "governmental procedure" for statutory purposes. See Section 9-33-2(e). Further, Defendant's statements against Plaintiff's proposed development were made "in connection with an issue under consideration" of that administrative body. Id. These statements certainly constituted "an issue of public concern" because Defendant's objections concerned property development in the GIS, Harbor Houses, and Newport communities. See Connick v. Myers, 461 U.S. 138, *Page 5 
146, 103 S.Ct. 1684. Like the defendant in HometownProperties, the Defendants also submitted letters to government agencies concerning the proposed use of land that would directly impact their community if approved. See Hometown Properties,680 A.2d at 56. Further, like the defendants in Global WasteRecycling, Defendant's letters constituted participation in "public discourse regarding an issue of importance within the community." See Global Waste Recycling, 762 A.2d at 1208. Therefore, Defendants' speech, which was in the form of letters mailed to the CRMC, falls within the scope of the anti-SLAPP statute.
The Court must next determine if the Defendants' letters constitute a "sham" so as to not be afforded protection by the anti-SLAPP statute. The anti-SLAPP statute provides that speech is considered to be a "sham" if it "is not genuinely aimed at procuring favorable government action, result, or outcome, regardless of the ultimate purpose or motive." Section 9-33-2(a). A petition or free speech will be deemed as a "sham" only if it is both 1) objectively baseless in the sense that no reasonable person exercising the right of speech or petition could realistically expect success in procuring the government action, result or outcome; and 2) subjectively baseless in the sense that it is actually an attempt to use the governmental process itself for its own direct effects. Section 9-33-2(a) (emphasis added). The Court will only examine the subjective motivation behind a party's statements if, and only if, the Court finds those statements to be objectively baseless. Hometown Properties, Inc., 680 A.2d at 61 (citingCove Road Development v. Western Cranston Industrial ParkAssociates, 674 A.2d 1234, 1238 (R.I. 1996)).
Here, as stated above, Defendant's letters to the CRMC informed the CRMC that 1) Plaintiff is not the owner of the land that he seeks to expand upon; 2) that the Rhode Island Supreme Court has already decided condominium ownership issues; and 3) that Plaintiff's proposed expansion does not comport with the CRMC's setback requirements. Because *Page 6 
ownership is a prerequisite to CRMC approval, Defendants' statements were not objectively baseless; instead, such statements provided the CRMC with relevant information. Specifically, in response to the CRMC's requirement of a letter from the local tax assessor stating ownership of the property, Defendants provided the CRMC with the tax assessor's record demonstrating that Plaintiff is not the sole owner of the land in question. See Def.'s Ex. 2. Thus, due to the relevant nature of Defendants' speech, the Court finds that a reasonable person could realistically expect such statements to succeed in procuring government action.See Section 9-33-2(a). Therefore, Defendants' statements are not objectively baseless and, subsequently, the Court will not examine the subjective motivation behind Defendants' statements.See Cove Road, 674 A.2d at 1238.
In conclusion, this Court finds that Defendants' communications with the CRMC regarding Plaintiff's proposed condominium expansion fall under the purview of the Rhode Island anti-SLAPP statute and does not constitute a sham. Therefore, Defendant's Motion for Partial Summary Judgment on Counts II and III is granted.
Finally, the anti-SLAPP statute provides for a mandatory payment of attorney's fees to the prevailing party. Section 9-33-2(d). The anti-SLAPP statute states: "[i]f the court grants the motion asserting the immunity established by this section . . . the Courtshall award the prevailing party costs and reasonable attorney's fees, including those incurred for the motion and any related discovery matters." Id. (Emphasis added.) Accordingly, Defendants are entitled to reasonable attorney's fees. Upon submission of Defendants' motion for such attorney's fees, supported by affidavit, the Court will schedule a hearing to determine an appropriate amount. *Page 7 
 Conclusion
For the foregoing reasons, Defendants' Motion for Summary Judgment on Counts II and III of Plaintiff's Complaint is granted. Counsel shall prepare an appropriate order for entry.
[1] The Harbor Houses Declaration defines the term "Limited Common Element" as "that portion of the Common Elements appurtenant to or associated with and intended for the exclusive use [but not ownership] by one or more but fewer than all Units, and intended for the exclusive use of such Units. . . ." Harbor Houses Declaration at § 1.16 (emphasis added). Similarly, the Act defines a "Limited Common Element" as "a portion of the common elements allocated by the declaration . . . for the exclusive use of one or more but fewer than all of the units." Section 34-36.1-1.03(19) (emphasis added). Therefore, Harbor Houses' Limited Common Elements are owned in an undivided percentage interest by all 154 unit owners.