**POUND HILL CORPORATION, INC.**

v.

**Jacob PERL et al.**

**No. 94–167–Appeal.**

Supreme Court of Rhode Island.

Jan. 12, 1996.

David Wollin, Michael A. Kelly, Providence, for Plaintiff.

Lauren Jones, Robert Thurston, Jeffrey Gladstone, Michael L. Rubin (Intervenor), Providence, for Defendants.

## OPINION

WEISBERGER, Chief Justice.

This case comes before us on appeal by the plaintiff, Pound Hill Corporation, Inc. (Pound Hill) from a summary judgment entered in the Superior Court in favor of the defendants, Jacob Perl, Edward B. Gogek, the Providence Zen Center, and John Does I through V (collectively referred to as Zen Center). The plaintiff filed an action against the Zen Center for abuse of process and tortious interference with prospective contractual relations. The action arose out of the following alleged facts. The Zen Center was interested in purchasing a parcel of real estate to be used for its religious purposes. The seller of the property for various reasons was unwilling to sell to the Zen Center, and after some degree of uncertainty during negotiations the seller decided to convey the property to Pound Hill. After the seller and Pound Hill had entered into a purchase and sale agreement, representatives of the Zen Center made one further effort to purchase the property. This effort was unsuccessful.

Pound Hill's purpose in purchasing the property was to develop it as a subdivision of

residential property. Therefore, plaintiff filed an application with the planning board of the town of Cumberland and received pre-application approval. On or about September 19, 1988, the planning board granted preliminary approval to develop the property.

Thereafter, Pound Hill applied to the Cumberland Town Council for an amendment to the zoning ordinance to rezone the property from business B to residential A. On October 5, 1988, the Cumberland Town Council approved the request for an amendment to the zoning ordinance by a vote of four to one. Subsequently the sale was completed, and Pound Hill became the owner of the property. At this point Zen Center began a vigorous campaign to frustrate Pound Hill's efforts to retain town council approval. On October 11, Zen Center filed a landowner's protest, alleging that Pound Hill had not received the three-fifths vote required to rezone the subject parcel. This protest was filed even though the council had voted by four-fifths of its number to approve the zoning change. The town council on November 2, 1988, rejected the protest by a vote of five to one and confirmed its approval of the zone change. Several days later, on November 7, 1988, Zen Center filed a second landowner's protest, challenging the zone change. The town council on November 16, 1988, again rejected the protest on the ground that it had previously been rejected. The council again approved the zone change.

Zen Center then persuaded the mayor of Cumberland to take part in the controversy. He vetoed the action of the town council on or about November 16, 1988. After the veto, the president of the council gave notice of a special meeting to respond to the mayor's veto. At this point Zen Center filed a complaint in the Superior Court for the County of Providence, seeking a temporary restraining order to prohibit the town council from meeting to respond to the mayor's action. A justice of the Superior Court denied the request for a temporary restraining order. On November 18, 1988, the town council met and again approved the zoning change, overriding the mayor's veto by a vote of five to zero. Pound Hill then presented its proposal for final approval to the Cumberland planning board.

On December 20, 1988, Zen Center filed another action in the Superior Court in which it sought to restrain the town from implementing its zone change. This action had the effect of delaying Pound Hill's petition for final approval before the planning board. Some months later, in April of 1989, a justice of the Superior Court dismissed Zen Center's complaint because it had not been filed within forty days of the town council's order as mandated by G.L.1956 (1988 Reenactment) § 45-5-16. Zen Center appealed the dismissal to this court. The appeal was later dismissed in October of 1989 by a justice of the Superior Court for failure to comply with the rules of appellate procedure.

Meanwhile, in January of 1989 the membership of the Cumberland Town Council changed. Successful lobbying by the Zen Center and its supporters resulted in a new town council's declaring the zone change invalid. Shortly after this action, the wife of the vice president of Pound Hill received a call from Edward B. Gogek (Gogek), a member of the Zen Center, who suggested that Pound Hill should sell the property for $500,-000 (less than the price previously suggested by the vice president, Jackson Despres). Gogek asserted that as a result of his efforts and those of his supporters, Pound Hill would be stuck with the land unless it sold it to the Zen Center.

Pound Hill proceeded to seek approval from the Cumberland planning board of its proposed subdivision. The board granted preliminary approval on May 30, 1989. Several weeks later the planning board granted final approval of Pound Hill's plans for the development of the property. Zen Center representatives appealed from the planning board's final approval to the Cumberland Zoning Board of Review. One defendant, Vincent Azzarone, appeared before the zoning board on September 13, 1989, but presented no evidence in support of his objection to the approval. The zoning board denied the appeal on September 27, 1989, and granted approval. Pound Hill claims that as a result of the relentless opposition of Zen Center, it was hindered and delayed in

achieving council and planning-board approval of its development plans for approximately one year. It further claimed substantial financial loss as a result of this delay.

■ On the basis of this complaint a justice of the Superior Court granted summary judgment in favor of Zen Center on the ground that the First Amendment protected the right of Zen Center to petition the government for redress of grievances as set forth by the Supreme Court of the United States in *Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961), and later in *United Mine Workers of America v. Pennington*, 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965). These cases arose in the context of the application of the Sherman Antitrust Act in circumstances wherein a party with an anticompetitive motive attempted to interfere through governmental agencies with the ability of a potential competitor to obtain the necessary licenses in order to enter the field. The principles enunciated in these cases have been called the Noerr–Pennington doctrine. Although the doctrine arose in a context of application of the antitrust statutes, it is based upon the First Amendment right to petition the government for redress of grievances. To this doctrine there has developed a certain exception as recognized in *California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972), and cited as the "sham exception." This exception requires there be a defendant whose activities are not genuinely aimed at procuring favorable government action at all as opposed to one who genuinely seeks to achieve a governmental result " 'but does so *through improper means.'* " *Allied Tube & Conduit Corp. v. Indian Head, Inc.*, 486 U.S. 492, 508 n. 10, 108 S.Ct. 1931, 1941 n.10, 100 L.Ed.2d 497, 510 n. 10 (1988). The sham exception was later amplified in *City of Columbia v. Omni Outdoor Advertising, Inc.*, 499 U.S. 365, 111 S.Ct. 1344, 113 L.Ed.2d 382 (1991). In this case Justice Scalia, speaking for a unanimous court on this issue, drew a distinction between one attempting to achieve a governmental outcome for an improper anticompetitive purpose (keeping a competitor in the field of billboard advertis-

ing from entering the market through unconstitutional ordinances) and one attempting to delay the efforts of a competitor by misuse of the process itself and not by means of the governmental action that the lobbying seeks. *Id.* at 381, 111 S.Ct. at 1354, 113 L.Ed.2d at 398–99. This process-versus-outcome distinction was again recognized in *Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc.*, 508 U.S. 49, 113 S.Ct. 1920, 123 L.Ed.2d 611 (1993).

■ In essence the motion justice determined that there were no material factual issues in the case at bar and that, interpreting the allegations of the plaintiff in the light most favorable to it, defendants were nevertheless entitled to summary judgment as a matter of law. We have stated on numerous occasions that summary judgment " 'is a drastic remedy and should be cautiously applied.' " *Rustigian v. Celona*, 478 A.2d 187, 189 (R.I.1984). It is not the office of the trial justice to determine issues of fact but to draw all favorable inferences that can be drawn from matters properly before the court in favor of the party against whom the motion is made in order to determine whether material factual issues exist. *Casador v. First National Stores, Inc.*, 478 A.2d 191 (R.I.1984); *Steinberg v. State*, 427 A.2d 338 (R.I.1981); *Lennon v. MacGregor*, 423 A.2d 820 (R.I.1980).

There seems little question that plaintiff's action for abuse of process would have met the requirements of our cases in stating a claim upon which relief could be granted. *Hillside Associates v. Stravato*, 642 A.2d 664 (R.I.1994); *DeLeo v. Anthony A. Nunes, Inc.*, 546 A.2d 1344 (R.I.1988), *cert. denied*, 489 U.S. 1074, 109 S.Ct. 1522, 103 L.Ed.2d 828 (1989); *Nagy v. McBurney*, 120 R.I. 925, 392 A.2d 365 (1978). Similarly plaintiff's claim of interference with advantageous relations would also have met a similar requirement. *Mesolella v. City of Providence*, 508 A.2d 661 (R.I.1986).

The plaintiff argues that the application of the Noerr–Pennington doctrine would in effect overturn these cases and eliminate our action for abuse of process and interference with advantageous relations. We believe

that the result is not quite so drastic as plaintiff suggests, but we do acknowledge that the Noerr–Pennington doctrine, resting as it does upon the First Amendment right to petition, does add a constitutional gloss to civil actions for abuse of process and actions for interference with advantageous relations. Nevertheless, we believe that the actions, in appropriate circumstances, do survive.

In *Professional Real Estate Investors, Inc.*, Justice Thomas speaking for the Court, defined "sham" litigation as one that is subject to a two-part test. 508 U.S. at ——, 113 S.Ct. at 1928, 123 L.Ed.2d at 624. "First, the lawsuit must be objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits," and then the court will move to the second portion of the test, which is subjective motivation. Under the second part of the definition of the term "sham," the Court in antitrust litigation "should focus on whether the baseless lawsuit conceals 'an attempt to interfere *directly* with the business relationships of a competitor,' * * * through the 'use [of] the governmental *process*—as opposed to the *outcome* of that process—as an anticompetitive weapon.'" *Id.*

■ Applying this two-part test to the allegations set forth by plaintiff in the case at bar, we are of the opinion that genuine issues of fact exist concerning whether certain actions taken by defendants were objectively baseless and utilized the process itself rather than the intended outcome in order to hinder and delay plaintiff in its attempt to develop the subject real estate.

We are of the opinion that a trier of fact might well determine that the landowner's protests insofar as based upon the necessity of a three-fifth's vote when a four-fifth's vote had been obtained were objectively baseless.

A trier of fact might also determine that the filing of an action in the Superior Court to enjoin the Cumberland Town Council from meeting was objectively baseless. *Smith v. Brock*, 83 R.I. 432, 118 A.2d 336 (1955). A trier of fact might determine that filing an action in the Superior Court after the time (forty days) required by § 45–5–16 was similarly objectively baseless, particularly in view of the fact that no attempt was made to meet the appellate procedural requirements. A trier of fact might determine that the appeal from the planning-board approval of Pound Hill's plat was also objectively baseless since no substantive ground for such an appeal was presented to the zoning board of review on September 27, 1989.

■ We recognize that the subjective motivation of the defendants is subject to conflicting interpretations based upon an affidavit filed by Gogek as well as the defendants' pleadings, but the duty of a trial justice on a summary judgment hearing is not to resolve disputed factual issues but only to find them. *McPhillips v. Zayre Corp.*, 582 A.2d 747 (R.I.1990). In considering the existence or nonexistence of material factual issues, this court must apply the same standards as are applicable to the trial court. *Steinberg v. State*, 427 A.2d 338 (R.I.1981); *Julian v. Zayre Corp.*, 120 R.I. 494, 388 A.2d 813 (1978). Applying this standard, we are of the opinion that even under the application of the Noerr–Pennington doctrine, together with our case law on abuse of process and interference with advantageous relations, there are still material issues of fact in the record that could not appropriately be determined on a motion for summary judgment.[1]

For the reasons stated, the appeal of the plaintiff is sustained.[2] The summary judg-

---

1. An example of actions by defendants that might merit the protection of the Noerr–Pennington doctrine would be their successful lobbying of the mayor of Cumberland to veto the ordinance and their successful lobbying of the new council to declare the prior zone change invalid. These actions were based upon expectation and realization of a favorable outcome as opposed merely to using process to hinder and delay.

2. We appreciate the assistance given to us by the Attorney General in his capacity as an interve-

nor. However, we decline to expand the Noerr–Pennington doctrine under the cognate provision of the Rhode Island Constitution (article 1, section 21) since we believe that the Noerr–Pennington doctrine affords ample protection by its interpretation of the First Amendment to the Federal Constitution to those who seek to petition governmental agencies and courts for redress of grievances. In respect to Rhode Island law, the parties and the intervenor may wish upon remand to consider the relevance and applicability

ment entered in the Superior Court is hereby vacated. The papers in the case may be remanded to the Superior Court for further proceedings not inconsistent with this opinion.

to this controversy of G.L.1956 (1991 Reenactment) § 45–24–67.