**COVE ROAD DEVELOPMENT**

v.

**WESTERN CRANSTON INDUSTRIAL PARK ASSOCIATES et al.**

No. 94–520–Appeal.

Supreme Court of Rhode Island.

April 30, 1996.

---

Michael Minsker, Charlotte, NC, George F. McDonald, Cranstin, for Plaintiff.

Elizabeth Flynn Sullivan, Mark Dolan, Paul A. Lietar, Ronald Langlois, Providence, for Defendant.

## OPINION

LEDERBERG, Justice.

This case came before the Supreme Court on the appeal of the plaintiff, Cove Road Development (Cove Road), from a summary judgment entered in the Superior Court in favor of the defendants, Western Cranston Industrial Park Associates, its members, and landowners within the Western Cranston Industrial Park (collectively referred to as Western Cranston or defendants). Cove Road brought the instant action, alleging that the defendants had engaged in malicious prosecution and abuse of process by instituting and pursuing an appeal of zoning amendments that were requested by Cove Road and were granted by the city of Cranston, Rhode Island. For the reasons stated herein, we affirm the entry of summary judgment.

### Facts and Procedural History

On April 17, 1986, the Ordinance Committee of the Cranston City Council conducted a hearing on a petition to change the zoning of certain property in Cranston to allow for the development of residential housing on the property. The proceeding was initiated by Cove Road's predecessors in interest to the property, DiFazio, Inc. (DiFazio) and Maria Realty, Inc. (Maria). DiFazio and Maria had entered into a purchase-and-sale agreement with Cove Road, but the sale was contingent upon the change in zoning.[1] After the city council adopted the zoning amendment on April 28, 1986, Western Cranston filed suit in Superior Court, alleging that the amendment violated Cranston's comprehensive zoning plan and constituted illegal spot-zoning.

---

1. Cove Road purchased the various segments of the property in question during the period December 1986 to January 1990.

At trial before a justice of the Superior Court sitting without a jury, Western Cranston presented the testimony of an expert in traffic engineering who opined that although the zoning amendment would increase traffic by 40 percent, road capacity was adequate to accommodate the additional traffic. Western Cranston also called a real estate expert who testified that the insufficient 25–foot buffer zone between the industrial park and the proposed housing would make the development "the most offensive type of residential use." Western Cranston's expert further testified that the development would constitute a "severe disruption of the comprehensive plan." In addition to its expert witnesses, Western Cranston called several lay witnesses, most of whom were property owners in the industrial park and abutters to the proposed development, who cited the potential problems of developing residential units in close proximity to an industrial park.

At the close of Western Cranston's case in chief, Cove Road filed a motion to dismiss Western Cranston's claim, pursuant to Rule 41 of the Superior Court Rules of Civil Procedure, Dismissal of actions. The trial justice did not rule on the motion but took it under advisement. In his written decision on the merits of the case, the trial justice stated that, "Upon a careful consideration of all the evidence and testimony, I find that the zoning change did not violate the City's comprehensive plan." Western Cranston subsequently filed an appeal with this Court, which appeal was denied and dismissed on March 17, 1988.

On March 15, 1991, Cove Road filed the instant action in the Superior Court, alleging that Western Cranston's zoning appeal constituted an abuse of process and malicious prosecution. The complaint characterized the zoning appeal as "a deliberate, willful and malicious interference with the legitimate rights of the Plaintiff" and alleged that the appeal "prevented the Plaintiff from being able to develop the property that it had acquired, causing Plaintiff to suffer losses, incur expenses and lose profits." Each defendant moved for summary judgment on various dates in January 1993. The motion justice granted summary judgment for de-fendants in a bench decision issued on August 3, 1994.

Cove Road filed a timely notice of appeal, and the case was placed on the regular calendar for full argument before this Court. On appeal, Cove Road alleged that "the record establishes genuine issues of fact as to the appellees' utilization of the court system to overturn a zoning ordinance without probable cause, [and] the trial court should not have granted summary judgment on the appellant's claims." Western Cranston defended the Superior Court's grant of summary judgment, arguing, first, that the zoning appeal was protected under the First Amendment to the United States Constitution and under article 1, section 21, of the Rhode Island Constitution as an exercise of the right to petition the government for redress of grievances; second, that Western Cranston had probable cause to initiate its appeal of the zoning amendment; and third, that Cove Road had not alleged facts sufficient to support an abuse-of-process claim.

### Constitutional Right to Petition

The First Amendment to the United States Constitution protects the right of the people to "petition the government for a redress of grievances." In a similar formulation, art. 1, sec. 21, of the Rhode Island Constitution declares that "[t]he citizens have a right * * * to apply to those invested with the powers of government, for redress of grievances, or for other purposes, by petition, address, or remonstrance." As a consequence of this fundamental constitutional principle, this Court cannot gainsay that the right to petition governmental bodies for the redress of grievances is "among the most precious of the liberties safeguarded by the Bill of Rights." *United Mine Workers of America v. Illinois State Bar Association,* 389 U.S. 217, 222, 88 S.Ct. 353, 356, 19 L.Ed.2d 426, 430 (1967). In particular:

"the First Amendment does not protect speech and assembly only to the extent it can be characterized as political. 'Great secular causes, with small ones, are guarded. The grievances for redress of which the right of petition was insured * * * are not solely religious or political ones.'" *Id.*

at 223, 88 S.Ct. at 356–57, 19 L.Ed.2d at 431.

Moreover, the General Assembly has acted to protect the right to petition for redress of grievances by recognizing that adverse consequences can befall those who choose to exercise that right. In particular, the Legislature has declared that

> "full participation by persons and organizations and robust discussion of issues of public concern before the legislative, judicial, and administrative bodies and in other public fora are essential to the democratic process, that there has been a disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances; that such litigation is disfavored and should be resolved quickly with minimum cost to citizens who have participated in matters of public concern." G.L.1956 § 9–33–1, as enacted by P.L.1993, ch. 354, § 1 and P.L. 1993, ch. 448, § 1.

■ Western Cranston argued on appeal that its actions were absolutely privileged under the doctrine that has been developed by the United States Supreme Court in the case of *Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961), and its progeny. In *Noerr,* a coalition of railroads had opposed deregulation of the trucking industry. *Id.* at 129, 81 S.Ct.at 525, 5 L.Ed.2d at 466. A Federal District Court judge concluded that the railroads' activities violated federal antitrust laws, but the Supreme Court reversed. *Id.* at 145, 81 S.Ct. at 533, 5 L.Ed.2d at 475. The Court rejected the District Court's rationale that "the railroads' sole purpose in seeking to influence the passage and enforcement of laws was to destroy the truckers as competitors for the long-distance freight business," and stated that "[t]he right of the people to inform their representatives in government of their desires with respect to the passage or enforcement of laws cannot properly be made to depend upon their intent in doing so." *Id.* at 138–39, 81 S.Ct. at 530, 5 L.Ed.2d at 471–72.

The Supreme Court reaffirmed the *Noerr* holding in *United Mine Workers of America v. Pennington,* 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965), which also dealt with a claim that the defendants' petitioning activities violated antitrust laws. In concluding that such activities were immune from antitrust liability, the Court stated that "[j]oint efforts to influence public officials do not violate the antitrust laws even though intended to eliminate competition." *Id.* at 670, 85 S.Ct. at 1593, 14 L.Ed.2d at 636. These efforts, however, cannot "limit the free exercise of the employees' right to engage in concerted activities according to their own views of their self-interest." *Id.* at 667, 85 S.Ct. at 1592, 14 L.Ed.2d at 635.

In the case at bar, Cove Road argued that the *Noerr–Pennington* doctrine should not govern our review of its claims because, even though Western Cranston was permitted to oppose the zoning amendment at the zoning-board and city-council levels, "[t]he First Amendment privilege has no application to the subsequent institution and maintenance of an abusive civil action in the Superior Court of Rhode Island and ultimately to the Supreme Court." We disagree.

This Court recently examined the reach of the *Noerr–Pennington* doctrine in *Pound Hill Corp., Inc. v. Perl,* 668 A.2d 1260 (R.I. 1996). In that case, Pound Hill had purchased a parcel of land and had sought and obtained zoning relief that enabled it to develop the parcel. To frustrate Pound Hill's plans, the defendants mounted a vigorous and persistent campaign that included repeated court challenges. The defendants there eventually succeeded in their endeavor, and Pound Hill filed suit, alleging abuse of process and interference with prospective contractual relations. We applied the *Noerr–Pennington* doctrine to those tort claims, emphasizing that, "[a]lthough the doctrine arose in a context of application of the antitrust statutes, it is based upon the First Amendment right to petition the government for redress of grievances." *Id.* at 1263. We reiterate here that the constitutional protection of the right to petition is no less compelling in the context of common-law tort claims than in the framework of federal antitrust legislation. Moreover, there exists no basis for Cove Road's contention that First

Amendment protection is limited to petitioning activity at the town-council level but does not protect a defendant's access to the courts.

### The "Sham" Exception

■ The Supreme Court noted in *Noerr*, however, that petitioning activity that amounted to "a mere sham" would not be protected under the First Amendment. *Noerr*, 365 U.S. at 144, 81 S.Ct. at 533, 5 L.Ed.2d at 475. In *California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 511, 92 S.Ct. 609, 612, 30 L.Ed.2d 642, 646 (1972), the Supreme Court explicitly recognized the "sham" exception to constitutional immunity under the *Noerr–Pennington* doctrine. In *California Motor Transport Co.*, a trucking company had repeatedly opposed another trucking company's attempts to obtain licenses from a state regulatory agency. The Court held that this pattern of "baseless, repetitive claims" had sought to deny the plaintiff "meaningful access to adjudicatory tribunals" and was not, therefore, protected under *Noerr–Pennington*. *Id.* at 512, 513, 92 S.Ct. at 612, 613, 30 L.Ed.2d at 647, 648.

The Supreme Court has clarified the test to be applied in determining whether a lawsuit falls within this sham exception in *Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc.*, 508 U.S. 49, 113 S.Ct. 1920, 123 L.Ed.2d 611 (1993). In that case the Court set forth a two-pronged inquiry to ascertain whether lawsuits are outcome-driven and thus protected as an exercise of constitutional rights or whether the lawsuits are process-driven sham activities. First, a court must determine whether the suit was "objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits." *Id.* at 59–61, 113 S.Ct. at 1928, 123 L.Ed.2d at 624. The Court went on to say:

"Only if the challenged litigation is objectively meritless may a court examine the litigant's subjective motivation. Under this second part of our definition of sham, the court should focus on whether the baseless lawsuit conceals 'an attempt to interfere *directly* with the business relationships of a competitor', * * * through the 'use [of] the governmental *process*—as opposed to the *outcome* of that process— as an anti-competitive weapon.'" *Id.* at 59–61, 113 S.Ct. at 1928, 123 L.Ed.2d at 624.

In Rhode Island, the General Assembly has essentially adopted the *Professional Real Estate Investors* test through its enactment of "Limits on Strategic Litigation Against Public Participation" (chapter 33 of title 9) in 1995. Specifically, § 9–33–2 provides in pertinent part:

"**Conditional immunity.**——(a) A party's exercise of his or her right of petition or of free speech under the United States or Rhode Island Constitutions in connection with a matter of public concern shall be conditionally immune from civil claims, counterclaims, or cross-claims. Such immunity will apply as a bar to any civil claim, counterclaim, or cross-claim directed at petition or free speech * * * except if said petition or free speech constitutes a sham. Petition or free speech constitutes a sham only if it is not genuinely aimed at procuring favorable government action, result or outcome, regardless of ultimate motive or purpose. Petition or free speech will be deemed to constitute a sham as defined in the previous sentence only if it is both:

(1) objectively baseless in the sense that no reasonable person exercising the right of speech or petition could realistically expect success in procuring such government action, result, or outcome, and

(2) subjectively baseless in the sense that it is actually an attempt to use the governmental process itself for its own direct effects. Use of outcome or result of the governmental process shall not constitute use of the governmental process itself for its own direct effects."

On appeal, Cove Road urged this Court to reverse the grant of summary judgment on the bases that Western Cranston lacked probable cause to seek judicial review of the zoning amendments and that Western Cranston's actions were motivated by an "ulterior and wrongful purpose for which the court system was not designed." The lack of prob-

able cause to initiate judicial proceedings constitutes an element of the common-law tort of malicious prosecution for which Cove Road brought suit against Western Cranston. *Nagy v. McBurney,* 120 R.I. 925, 392 A.2d 365 (1978). The case before us, however, must be examined under the rubric of *Noerr–Pennington* immunity inasmuch as the provisions of the United States and Rhode Island constitutions take precedence over common-law tort doctrines, U.S. Const. Art. VI; R.I. Const. Art. 15, sec. 1, as do the statutory requirements of § 9–33–2. We therefore will treat Cove Road's contention that Western Cranston lacked probable cause to initiate court proceedings as equivalent to a contention that Western Cranston's court challenge was a sham proceeding not worthy of immunity under § 9–33–2 or under the *Noerr–Pennington* doctrine.

In *Pound Hill,* we applied the bipartite test of *Professional Real Estate Investors* in order to evaluate the propriety of the Superior Court's grant of summary judgment in favor of the defendants. *Pound Hill Corp., Inc.,* 668 A.2d at 1264. After noting that summary judgment should be cautiously applied, we concluded that in the circumstances of that case the Superior Court had erred in granting summary judgment because a trier of fact *could* determine that the defendants' activities were objectively baseless. *Id.* Those activities included: (1) protesting that the town council's four-fifths vote of approval was inadequate even though zoning amendments required approval by only three-fifths of the council, (2) failing to comply with the filing deadline in its Superior Court suit that sought to restrain the town from implementing the zoning change and failing to comply with the rules of appellate procedure, and (3) pursuing an appeal of the planning-board approval but presenting "no substantive ground for such an appeal" to the zoning board of review. *Id.*

Turning to the case at bar, we conclude that the activities engaged in by Western Cranston in opposition to Cove Road's development plans did not rise to the level of frivolity displayed by the defendants in *Pound Hill.* Moreover, Cove Road presented insufficient facts and allegations to create a genuine issue of fact as to whether Western

Cranston had probable cause to appeal the zoning amendment to the Superior Court and later to the Supreme Court. At trial, Western Cranston presented expert and lay testimony in support of its position that the development of high-density residential housing adjacent to an industrial park was inconsistent with the city's comprehensive plan and could result in nearby residential abutters complaining of industrial activities. The trial justice clearly found this evidence to be of some significance, as he refused to dismiss Western Cranston's case. Moreover, in his eleven-page decision, the trial justice addressed the substance of Western Cranston's appeal at length, but nowhere in the decision did the trial justice indicate in any way that he viewed the appeal as frivolous or lacking merit.

In summary, therefore, we conclude that the defendants had reason to believe that the proximity of the plaintiff's proposed residential development to the industrial park would create problems for the defendants who, in response, duly exercised their right to redress their grievances. We further conclude that the defendants' appeal of the zoning amendment that permitted the project was not objectively baseless, in that an objective litigant could reasonably have expected a successful outcome. Consequently, we affirm the summary judgment of the Superior Court and deny and dismiss the appeal of the plaintiff. The papers in the case may be returned to the Superior Court.