DECISION
Presently before the Court are: (1) Lawrence L. Goldberg, Esq.'s (Attorney Goldberg) Motion for Advance Attorney's Fees and the Receiver's[1] objection thereto; (2) Mayor Charles D. Moreau's (Mayor Moreau) Motion for Summary Judgment as to his Complaint for Indemnification and the Receiver's Counter-Motion thereto; (3) the City Council's Motion to Instruct Receiver and the Receiver's objection thereto; and (4) the Receiver's Motion for Partial Summary Judgment and Mayor Moreau and the City Council's objections and Cross-Motion thereto.
 I Facts and Travel
The facts and travel of this case have been well documented in several prior written Decisions of both this Court and our Supreme Court. See Moreau v. Flanders, 15 A.3d 565 (R.I. 2011);see also Pfeiffer v. Moreau, Nos. PB 10-5615, PB 10-5672, 2010 R.I. Super. LEXIS 149 (R.I. Super. Oct. 18, 2010). *Page 3 
Therefore, the Court will not repeat the facts and travel of this case, but will supplement with additional factual background when necessary.[2]
 II Standard of Review
Summary judgment is proper when, after reviewing the admissible evidence in a light most favorable to the non-moving party, "no genuine issue of material fact is evident from the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, and the motion justice finds that the moving party is entitled to prevail as a matter of law."Smiler v. Napolitano, 911 A.2d 1035, 1038 (R.I. 2006) (quoting Rule 56(c)). When considering a motion for summary judgment, "the court may not pass on the weight or credibility of the evidence but must consider the affidavits and other pleadings in a light most favorable to the party opposing the motion." Westinghouse Broad.Co., Inc. v. Dial Media, Inc.,122 R.I. 571, 579, 410 A.2d 986, 990 (R.I. 1980) (internal citations omitted). During a summary judgment proceeding, "the justice's only function is to determine whether there are any issues involving material facts." Steinberg v. State,427 A.2d 338, 340 (R.I. 1981). Moreover, in passing upon a motion for summary judgment under Rule 56, if no genuine issue of material fact exists, the trial justice may determine "`whether the moving party is entitled to judgment under the applicable law.'"Ludwig v. Kowal, 419 A.2d 297, 301 (R.I. 1980) (quotingBelanger v. Silva,114 R.I. 266, 267, 331 A.2d 403, 404 (1975)). "When there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law, summary judgment is properly entered."Tangleridge Dev. Corp. v. Joslin,570 A.2d 1109, 1111 (R.I. 1990); see *Page 4 also Holliston Mills, Inc. v. Citizens Trust Co.,604 A.2d 331, 334 (R.I. 1992) (stating that "summary judgment is proper when there is no ambiguity as a matter of law").
 III Discussion A City Council's Right to Convene
The City Council's Motion to Instruct Receiver arises out of the Receiver's refusal to make the City Clerk available to it. On January 26, 2011, the City Council requested the services of the City Clerk in order to convene a meeting in its advisory capacity.See City Council's Mot. to Instruct Receiver ¶ 1. The proposed agenda for the February 9, 2011 meeting indicated that the City Council was to hold an "[a]dvisory meeting to consider the effect of the receivership upon the City and [to consider] an advisory resolution to request the Governor to terminate the receivership or compel the receiver to seek Federal Bankruptcy protection for the City." See Feb. 9, 2011 City Council Agenda. By letter dated February 11, 2011, the Receiver, through counsel, declined the City Council's request to make the City Clerk available.See Feb. 11, 2011 Letter. As a result, the City Council now seeks an order directing the Receiver to cease interfering with its attempts to convene and authorizing the City Clerk to undertake all things customary, necessary, or appropriate to enable the City Council to meet in an advisory capacity.
The gravamen of the parties' disagreement is over the right of the City Council to convene in order to provide the Receiver with unsolicited advice. The City Council maintains that the Receiver was unjustified in interfering with their attempt to convene and affirmatively pass an advisory resolution. Conversely, the Receiver contends, that the City Council's attempt *Page 5 
to organize and take affirmative action was "outside of its limited role of providing advice to the Receiver, if and when requested."See Feb. 11, 2011 Letter.
Pursuant to § 45-9-7(c), upon appointment, the Receiver has "the right to exercise the powers of the elected officials under the general laws, special laws and the city or town charter and ordinances relating to or impacting the fiscal stability of the city or town . . ." Sec. 45-9-7(c). Those powers are superior to and supersede the powers of Mayor Moreau and the City Council, who are thereby relegated to an advisory capacity. Id. As advisors, this Court previously held that the Mayor and City Council may act only when the Receiver "defer[s] to them for action and advice in an appropriate situation." See Pfeiffer v. Moreau,2010 R.I. Super. LEXIS 149, at *66. Indeed, the Court viewed "advisory capacity" as akin to situations where our Supreme Court issues an advisory opinion. In those instances, the Court issues "[a] nonbinding statement . . . of its interpretation of the law" only after the matter is "submitted for that purpose." Black'sLaw Dictionary 1201 (9th ed. 2009).
Moreover, the Receiver's actions were in accord with both the October 21, 2010 Final Judgment on Counts One, Two, Six and Seven of the Receiver's Complaint, and One, Two, Three, Four, Five, Six and Seven of the Mayor's and City Council's Complaint (Final Judgment) and this Court's order of November 30, 2010 (November 30th Order). Pursuant to the Final Judgment, the members of the City Council, in their official capacities, were permanently enjoined and restrained,inter alia, "(iii) from interfering with the acts of the Receiver in his capacity as receiver, and (iv) from acting in contravention of the Act." See Final Judgment ¶ 2. Here, the Receiver advised the City Council that its request to convene "would [not only] result in the inappropriate use of City resources, [but also] the [proposed resolution] would not advance the Receiver's mandate and the City's critical need of returning the City to fiscal stability." See *Page 6 
Feb. 11, 2011 Letter. Specifically, the Receiver was concerned that the proposed resolution "would likely create the impression of dissension and a lack of stability in the City," thereby adversely affecting the City and its ability to access capital markets.See id. Under these circumstances, therefore, the Receiver's rejection was in accord with the terms of the Final Judgment.
Similarly, the November 30th Order granted the City Council only limited authority and authorized the City Clerk to be made available only for a narrow purpose. Under the November 30th Order, the City Council was authorized "to convene and meet with its counselwith respect to the appeal of the instant matter and any and allmatters related thereto." See November 30th Order ¶ 1 (emphasis added). Similarly, the City Clerk was only authorized to "undertake all things customary, necessary or appropriate in order for the [City Council] to convene and retire to executive session for the purpose of discussing litigationconfidentially and to maintain confidential minutes thereof sealed." Id. ¶ 2 (emphasis added). In this instance, however, where the City Council is neither meeting to address its appeal or to discuss the receivership litigation, the City Council is attempting to act in excess of its limited authority under the November 30th Order; thus, the Receiver's denial was supported by the express terms thereunder.
Nevertheless, in light of recent enactments by our General Assembly, these determinations are not dispositive. SeeGem Plumbing Heating Co., Inc. v. Rossi,867 A.2d 796, 802 (R.I. 2005) (holding that if the General Assembly amends a statute relevant to a case that is pending, a court must apply the law in effect at the time). On July 13, 2011, Governor Chaffee signed into law 2011 R.I. Pub. Laws 389 and 2011 R.I. Pub. Laws 328. In pertinent part, these companion bills amended § 9-45-7(c) to include: *Page 7 
 "The Receiver shall allow the city's or town's elected officials to serve their constituents by providing advice to the receiver on the matters relating to the operation of the city or town. In the event a conflict arises between the chief elected official or city or town council and the receiver, the receiver's decision shall prevail." See 2011 R.I. Pub. Laws 389; 2011 R.I. Pub. Laws 328.
On its face, the amended Act now imposes a mandatory requirement that the Receiver allow the City Council to provide him with advice. See Castelli v. Carcieri, 961 A.2d 277, 284 (R.I. 2008) (quoting Conrad v. State of R.I.-Med. Ctr.-Gen. Hosp.,592 A.2d 858, 860 (R.I. 1991)) (affirming the long-held principle that the use of the word "shall" denotes "something mandatory or the `imposition of a duty'"). As stated in the Explanation by the Legislative Council, the amended Act "require[s] that a municipal receiver make a good faith effort to allow elected officials tocontinue serving their constituents by providing advice to thereceiver whenever possible." Id. (emphasis added). In effect, the General Assembly, in passing these subsequent enactments, has attempted to fine-tune the existing statutory scheme. See 1A Sutherland StatutoryConstruction §§ 22:31, 41:11, 48:18 (7th ed. 2007). In so doing, the General Assembly has made a substantive change, expanding the rights of elected officials serving in an advisory capacity under the Act, and this Court is bound to abide by those legislative pronouncements.
Consequently, in light of these recent enactments, the Court finds that the City Council now has the statutory authority to convene in order to provide the Receiver with advice — even where it is not sought — on matters relating to the operation of Central Falls. Despite this newly minted authority, however, the Court must reiterate that the City Council ultimately remains subject to the Receiver's superseding powers. *Page 8 
 B Legal Fees
It is well settled in Rhode Island that a request for legal fees is governed by the "American Rule." See Moore v.Ballard, 914 A.2d 487, 489 (R.I. 2007). As a result, litigants are generally required to pay their own attorney's fees, absent statutory authority or contractual liability. Ballard, 914 A.2d 489 (citing Eleazer v. Ted Reed Thermal Inc.,576 A.2d 1217, 1221 (R.I. 1990)). This rule, however, is subject to several exceptions. See Blue Cross Blue Shieldof R.I. v. Najarian, 911 A.2d 706, 711 n. 5 (R.I. 2006) (citingChambers v. NASCO, Inc.,501 U.S. 32, 45, 111 S. Ct. 2123 (1991)); see alsoVincent v. Musone, 574 A.2d 1234, 1235 (1990) (affirming the Court's inherent power to fashion appropriate remedies that "serve the ends of justice"). Pursuant to the "common fund exception," a court may award attorney's fees to the party whose litigation efforts directly benefited others. Najarian,911 A.2d at 711 n. 5. A court may also assess attorney's fees as a sanction for willful disobedience of a court order. Id.
Lastly, a court may award attorney's fees when a party has acted in bad faith or for oppressive reasons. Id.
Presently before the Court are claims for legal fees by the City Council, Mayor Moreau, and the Receiver. The Court will address these claims in seriatim.
 1 Attorney Goldberg's Motion for Advance Attorney Fees
Attorney Goldberg, counsel for the City Council, seeks advance legal fees in connection with his representation. Attorney Goldberg, however, can point to no statutory or contractual provision as the basis for his claim for legal fees. Ballard, 914 A.2d at 489 (citing Eleazer, 576 A.2d at 1221). Moreover, in light of this Court's October 18, 2010 Decision, and our Supreme *Page 9 
Court's affirmation of the same, the Court is of the opinion that Attorney Goldberg's representation of the City Council was in contravention of both the Act and the City of Central Falls Charter.See generally, Moreau v. Flanders,15 A.3d 565 (R.I. 2011) (affirming the constitutionality of the Act and upholding the Receiver's superseding statutory authority thereunder).
Indeed, on August 5, 2010, the Receiver — pursuant to his authority under §§ 45-9-7(b)-(c) and § 45-9-6(d)(17) — rescinded the City Council's August 4, 2010 Resolution authorizing Attorney Goldberg's appointment as its counsel. Attorney Goldberg may now contest the validity of the Receiver's rescission, and may accuse the Receiver of serving as an autocrat, but our Supreme Court has expressly disagreed with that contention. See Moreau,15 A.3d at 577. In Moreau, the Supreme Court stated:
 "The mayor and city council argue that the powers of the receiver are `dictatorial' in nature. We do not agree.[] Although the powers of the receiver are broad and sweeping, they nonetheless are contained and channeled in at least three significant ways." Id. (emphasis added).
In affirming the constitutionality of the Receiver's "broad and sweeping" powers under the Act — including the power to rescind any action or decision of the City Council — our Supreme Court has proclaimed the law of this land, and Attorney Goldberg and the City Council are bound by it.
Moreover, it is well settled that "when a municipal corporation has legal counsel charged with a duty of conducting the legal business of a governmental agency, contracts with other attorneys for additional or extra legal services are void." SeeCoventry Sch. Comm. v. Richtarik,122 R.I. 707, 715, 411 A.2d 912, 916 (1980). Here, Attorney Goldberg seeks to rely on an exception to the rule. See id. InRichtarik, our Supreme Court *Page 10 
 "recognize[d] the implied authority of a municipal board or officer to hire counsel in the good-faith prosecution or defense of an action taken in the public interest and in conjunction with its or his official duties where the municipality's attorney refuses to act or is incapable of or is disqualified from acting." Id.
The Court, however, does not believe that the City Council's engagement of Attorney Goldberg was an "action taken in . . . conjunction with [its] official duties." See id.
Although our Supreme Court affirmed that "the mayor and city council had not been removed from office," the Act expressly provides that they "serve [only] in an advisory capacity." Moreau,15 A.3d at 588; see also § 45-9-7(c). As advisors, the City Council simply did not possess the requisite authority to engage counsel, particularly, where, as here, the resolutions were rescinded by the Receiver.
In light of the foregoing, the Court finds that the City Council lacked the authority to engage Attorney Goldberg in connection with the instant matters, and his continued representation was in violation of the City's Charter and the Act. For that reason, the Court denies his request for advance attorney's fees.
 2 Indemnification of Mayor Moreau
Mayor Moreau seeks indemnification from the Receiver pursuant to Article III, Section 30-61 of the Code of Ordinances of the City of Central Falls.[3] In connection therewith, Mayor Moreau maintains that he was acting within the scope of his official duties in defending against the Receiver's litigation, and he therefore seeks all losses, costs, expenses, and damages — including attorney's fees and court costs — arising out of the defense and prosecution of the instant matters. *Page 11 
Pursuant to G.L. 1956 § 45-15-16 (Indemnification Statute) cities and towns are authorized to pass ordinances to indemnify public officials from legal fees. In accordance therewith, Central Falls adopted Chapter 2, Division 3, Section 2-107, et al., of its Code of Ordinances (Indemnification Ordinances). Section 2-108 of the Indemnification Ordinances is nearly identical to the Indemnification Statute and provides:
 "The city shall indemnify any and all public employees, officials, members of boards, agencies and commissions . . . from all loss, cost, expense and damage, including legal fees and court costs, if any, arising out of any claim, action . . . or judgment, by reason of any intentional tort or by reason of any alleged error or misstatement or action or omission, or neglect or violation of the rights of any person under any federal or state law, including misfeasance, malfeasance or nonfeasance or any act or omission or neglect contrary to any federal or state law which imposes personal liability on any such employee, official or member, if such employee, official or member, at the time of such intentional tort or act, omission or neglect, was acting within the scope of his official duties or employment." Sec. 2-108.
In those instances where an official qualifies for coverage, the City is required to
 "provide legal representation through the city solicitor or through outside legal counsel without charge to the persons involved to any city officer or employee indicated in section 2-108, in connection with any claim, suit for damages or other action against such person arising from the performance by said person of his public duties." Sec. 2-110(a).
However, should a party seek to engage his own private counsel to assist in his defense, that party is required to do so at his own expense. Id.
As a threshold matter, Mayor Moreau's right to representation and indemnification requires that the matter arise "within the scope of his official duties or employment" or "from the performance . . . of his public duties." See §§ 2-109, 2-110. Here, however, upon the Receiver's appointment, the scope of the Mayor's duties was limited to an "advisory capacity." See § 45-9-7(c). *Page 12 
Therefore, when Mayor Moreau disregarded the Receiver's explicit instructions and proceeded to engage outside counsel and continue with litigation, Mayor Moreau was acting beyond the narrow scope of his official or public duties.
Moreover, in a September 22, 2010 letter to Mayor Moreau, the Receiver rescinded not only Mayor Moreau's decision to proceed with litigation in his official capacity, but also the City Council's resolution to engage outside counsel for Mayor Moreau at the City's expense.[4] Consequently, Mayor Moreau's actions were in direct contravention of the Receiver's superior and superseding statutory authority. For that reason, the Court finds as a matter of law that Mayor Moreau's actions exceeded the limited scope of the duties granted to him under the Act, and he is consequently ineligible for indemnification or representation under § 2-109 or § 2-110.
Furthermore, even assuming that Mayor Moreau was acting within the scope of his duties, his right to indemnification is not absolute. Indeed, the Indemnification Ordinances provide for several limitations. First, the City Council is granted the discretion to "decide, on a case-by-case basis, whether indemnification should be allowed or declined." Sec. 2-109. Next, "[t]he city shall decline to indemnify any such employee, official or member for any *Page 13 
misstatement, error, act, omission or neglect if the same resulted from willful, wanton or malicious conduct on the part of such employee, official or member." Id. Finally, "[t]he city shall not be liable for settlement, costs, expenses, or attorney's fees arising out of any claim or suit effected without its consent." Sec. 2-110(c). Accordingly, where, as here, the Act authorizes the Receiver to exercise the powers of the mayor and city council, it follows that the Receiver, acting as the city council, has the authority to decline Mayor Moreau's indemnification under the Indemnification Ordinances. See § 2-109. It follows, that having rescinded the Mayor's decision to proceed with litigation and the City Council's resolution to engage outside counsel for Mayor Moreau at the City's expense, the City and Receiver are undoubtedly relieved from any indemnification obligation. See § 2-110.
Similarly, Mayor Moreau's right to representation by outside counsel is not absolute. The Indemnification Ordinances provide that "[t]he city council shall have the authority to approve or deny any and all requests for outside legal counsel on a case-by-case basis." Sec. 2-110(b). Without the city council's approval, "[t]he city shall [not] be responsible for paying attorneys' fees for outside legal counsel." Sec. 2-111(b). Thus, the Receiver, exercising the powers of the city council in accordance with §§ 45-9-7(b) and (c), was vested with the authority to approve or deny Mayor Moreau's requests for outside legal counsel. In view of Mayor Moreau's engagement of outside counsel — in contravention of the Receiver's September 22 letters — the City and Receiver are relieved of responsibility for indemnifying him against those expenses, and Mayor Moreau must now accept responsibility for the consequences of his choices. *Page 14 
 3 The Receiver's G.L. 1956 § 45-9-11 Claim
The Receiver also asserts a statutory claim for legal fees and seeks summary judgment on Counts IV and V of his Amended Verified Complaint. Those claims — pursuant to G.L. 1956 § 45-9-11 — seek an award of all costs incurred by Central Falls in prosecuting and defending claims seeking injunctive relief against Mayor Moreau and the City Council. For their part, Mayor Moreau and the City Council now assert protection under Rhode Island's Limits on Strategic Litigation Against Public Participation Act, G.L. 1956 § 9-33-1, et seq.
(Anti-SLAPP Statute) and the Noerr-Pennington
doctrine. Specifically, their cross-motion alleges that Counts IV and V are an attempt to deter them from exercising their constitutional right to petition — in violation of the Anti-SLAPP Statute and Noerr-Pennington doctrine — and therefore, they seek summary judgment as to those counts.
Under § 45-9-11, the City's exposure to excessive or unexpected expenditures is limited. In pertinent part, § 45-9-11 provides:
 "No official . . . shall knowingly expend or cause to be expended in any fiscal year any sum in excess of that official's department or other governmental unit's appropriation . . . nor commit the city or town, nor cause it to be committed, to any obligation for the future payment of money in excess of that appropriation . . ." Sec. 45-9-11(a).
Should an official intentionally cause a violative expenditure, the Act holds the official "personally liable to the city or town for any amounts expended in excess of an appropriation." Sec. 45-9-11(b).
Here, it is abundantly clear that the Receiver has satisfied the elements of his § 45-9-11 claims against Mayor Moreau and the City Council. First, neither party disputes that Central *Page 15 
Falls is in a receivership or that Mayor Moreau and the City Council qualify as "officials" as contemplated by the Act.[5] Next, the record clearly reflects that Mayor Moreau and the City Council "caused"[6] the Receiver to engage outside counsel and to file his Amended Verified Complaint in order to prevent the irreparable harm that would result from their ultra vires appointment of commissioners to CFHA and CFDCC. See Pfeiffer v.Moreau, 2010 R.I. Super. LEXIS 149, at *79-80 (finding injunctive relief necessary to prevent the "irreparable harm [that would] result if the Mayor and City Council [were] not enjoined from making further appointments, and the Receiver [was] hindered from administering the Act").
Moreover, Mayor Moreau and the City Council have failed to proffer any evidence to contradict the fact that no appropriations were made in the fiscal year 2010-2011 budget for the retention of outside legal counsel by any of the Receiver, Mayor Moreau, or the City Council. See Healy Aff ¶ 12; Receiver's Objection to Defs.' Cross-Motion for Partial Summ. J. Ex. K. In that connection, it is similarly undisputed that the Receiver's numerous letters to, and meetings with, Mayor Moreau and the City Council put them on notice that no appropriations had been made for outside counsel and any expenditures related thereto would not be financed by the City.See Healy Aff. ¶¶ 3-12; see also Receiver's Objection to Defs.' Cross-Motion for Partial Summ. J. Exs. F, G, H, I. Rather, the Receiver's September 22, 2010 letters to Mayor Moreau and the City Council plainly stated: *Page 16 
 "no appropriation ha[s] been budgeted by the City to engage counsel to prosecute and/or defend against an action to determine the constitutionality of the Act. If you take any action which either commits the City to pay for the prosecution of such action or causes the City to pay for the defense of such an action, you may be held personally liable under [§ 45-9-11(b] ."
It follows, therefore, that Mayor Moreau and the City Council's retention of counsel and pursuit of the instant litigation — despite the Receiver's admonitions — were intentional and in derogation of the Receiver's superior and superseding authority.
This, however, does not end the Court's inquiry. In their cross-motion, Mayor Moreau and the City Council invoke the Anti-SLAPP Statute and the Noerr-Pennington doctrine as a shield from liability. The Noerr-Pennington doctrine is "designed to protect the legitimate exercise of the First Amendment right to petition the government without the petitioner's being vulnerable to retributive civil claims by the targets of the petitioning activity." Alves v. Hometown Newspapers, Inc.,857 A.2d 743, 753 (R.I. 2004) (citing Hometown Props.,Inc. v. Fleming, 680 A.2d 56, 60 (R.I. 1996)) (citingProfessional Real Estate Investors, Inc. v. Columbia PicturesIndus., Inc., 508 U.S. 49, 56, 113 S. Ct. 1920, 1926 (1993)). "Although the [Noerr-Pennington] doctrine arose in a context of application of the antitrust statutes," courts have reasoned that "it is based upon the First Amendment right to petition the government for redress of grievances" and further extended the doctrine to tort cases. Pound Hill Corp.,Inc. v. Perl, 668 A.2d 1260, 1263 (R.I. 1996); HometownProps., Inc., 680 A.2d at 60.
Enacted in 1993, Rhode Island's Anti-SLAPP Statute was "intended to emulate the federal Noerr-Pennington doctrine by providing conditional immunity to any person exercising his or her right of petition or free speech under the United States or Rhode Island Constitution concerning matters of public concern." SeeGlobal Waste Recycling, Inc. v. Mallette,762 A.2d 1208, 1210-11 (R.I. 2000); *Page 17 Hometown Props., Inc. 680 A.2d at 60-61 (noting that "[l]ike the Noerr-Pennington doctrine, the [A]nti-SLAPP [S]tatute was adopted in order to protect valid petitioning activities");see also United Mine Workers ofAm. v. Pennington, 381 U.S. 657, 85 S. Ct. 1585 (1965). In passing the Anti-SLAPP Statute, our General Assembly sought to codify the Noerr-Pennington doctrine and thereby protect the "full participation by persons and organizations and robust discussion of issues of public concern before the legislative, judicial, and administrative bodies and in other public fora . . ." Sec. 9-33-1.
"In 1995 the General Assembly amended § 9-33-2. . . . As amended, the provisions of § 9-33-2 are nearly identical to the [U.S.] Supreme Court's articulation of the constitutionally derived conditional immunity afforded to nonsham petitioning activity underNoerr-Pennington." Hometown Props., Inc.,680 A.2d at 61-62. In effect, the General Assembly subsumed theNoerr-Pennington doctrine within our Anti-SLAPP Statute which now provides:
 "(a) A party's exercise of his or her right of petition or of free speech under the United States or Rhode Island constitutions in connection with a matter of public concern shall be conditionally immune from civil claims, counterclaims, or cross-claims. Such immunity will apply as a bar to any civil claim, counterclaim, or cross-claim directed at petition or free speech. . . ." Sec. 9-33-2.
Like the Noerr-Pennington doctrine, a party is afforded conditional immunity except in those instances where the petitioning activity or free speech "constitutes a sham" and is "not genuinely aimed at procuring favorable government action, result or outcome, regardless of ultimate motive or purpose."[7] Id. *Page 18 
In the instant matter, Mayor Moreau and the City Council's invocation of Rhode Island's Anti-SLAPP Statute fails as a matter of law. There is simply no evidence before this Court demonstrating that the Receiver attempted to deter either Mayor Moreau or the City Council from asserting their right to petition. Rather, the record reveals that any action taken by the Receiver against Mayor Moreau or the City Council was directed at them in their official capacities and both Mayor Moreau and the City Council were free to engage counsel or challenge the Act's constitutionality in their individual capacities and at their own expense.
Indeed, a review of the Receiver's Amended Verified Complaint indicates that it was filed in response to Mayor Moreau and the City Council's ultra vires appointment of commissioners to CFHA and CFDCC. Although the Receiver sought injunctive relief preventing Mayor Moreau and the City Council from making appointments to CFHA and CFDCC and retaining outside legal counsel, any such requests for relief were limited to their official capacities as Mayor and members of the City Council. See Amended Verified Complaint ¶¶ 32, 43, 53. Similarly, the Receiver's correspondence with Mayor Moreau and the City Council only instructed them to refrain from filing a legal action or retaining counsel in their official capacities. See, e.g., Receiver's Counter-Motion for Summ. J. Ex. E. Therefore, despite the Receiver's superior and superseding authority, Mayor Moreau and the City Council remained free to retain counsel and pursue their causes of action in their individual capacities and at their own expense.
Mayor Moreau and the City Council assert that because they were sued in both their official and individual capacities, the Receiver attempted to prevent them from exercising their *Page 19 
constitutional right to petition this Court in both capacities. However, Mayor Moreau and the City Council were named in their individual capacities only to the extent necessary for the Receiver to invoke § 45-9-11. See id. ¶¶ 58-65. As previously discussed, § 45-9-11 provides for the personal liability of any official who causes an expenditure in excess of a city or town's appropriations. For that reason, the Receiver was required to name Mayor Moreau and the City Council in their individual capacities in order to validly assert his statutorily-authorized claim for costs.
Furthermore, even assuming, arguendo, that Mayor Moreau or the City Council may properly invoke the Anti-SLAPP Statute, their claims would fail as a matter of law on the plain face of the Act. Indeed, § 45-9-15 provides:
 "Insofar as the provisions of this chapter are inconsistent with the provisions of any charter or other laws or ordinances, general, special, or local, or of any rule or regulation of the state or any municipality, the provisions of this chapter are controlling."
Therefore, where, as here, Mayor Moreau and the City Council's invocation of immunity under the Anti-SLAPP Statute is inconsistent with § 45-9-11, the provisions of the Act must prevail.
For all intents and purposes, Mayor Moreau and the City Council seek summary judgment so as to avoid the statutorily-authorized imposition of litigation costs. However, in light of our Supreme Court's affirmation of the constitutionality of the Act, Mayor Moreau and the City Council may not circumvent the clear intent of the General Assembly by invoking the Anti-SLAPP Statute and theNoerr-Pennington doctrine. Despite numerous admonitions from the Receiver, Mayor Moreau and the City Council proceeded in derogation of his authority and caused the City to incur expenses not previously appropriated. As a result, having chosen not to proceed in their individual capacities, the parties must now face the music and pay the price. *Page 20 
"The exercise of rights may be costly, [but] the first amendment does not prevent the government from requiring a person to pay the costs incurred in exercising a right." PremierElec. Const. Co. v. National Elec. Contractors Ass'n, Inc.,814 F.2d 358, 373 (7th Cir. 1987) (citing Harris v. McRae,448 U.S. 297, 100 S. Ct. 2671 (1980)). Accordingly, the Court grants the Receiver's request for partial summary judgment, and denies Mayor Moreau and the City Council's cross-motion.
 IV Conclusion
After due consideration of the arguments advanced by counsel at oral argument and in their memoranda, the Court finds, as a matter of law, that in light of the recent enactments by the General Assembly, the City Council now has the right to convene in order to provide the Receiver with advice. The Court, however, denies Attorney Goldberg's Motion for Advance Legal Fees. Furthermore, in light of the plain language of the Indemnification Ordinances, as well as the Receiver's superior and superseding authority, the Court finds as a matter of law that Mayor Moreau is not entitled to indemnification. In that connection, the Court finds as a matter of law that the Anti-SLAPP Statute andNoerr-Pennington doctrine are inapplicable, and therefore, Mayor Moreau and City Council are liable under § 45-9-11. Accordingly, the Court grants the Receiver's Counter-Motion for Summary Judgment of Mayor Moreau's Complaint for Indemnification and his Motion for Partial Summary Judgment of his Amended Verified Complaint.
Prevailing counsel may present an order consistent herewith which shall be settled after due notice to counsel of record.
[1] Robert G. Flanders, Jr., the current state-appointed receiver, and Mark A. Pfeiffer, the prior state-appointed receiver, shall hereinafter jointly be referred to as the "Receiver."
[2] Capitalized terms, unless otherwise defined herein, have the meaning assigned to them in this Court's prior Decision.
[3] The indemnification provision cited by Mayor Moreau, Article III, Section 30-61, has been recodified and is now found in Chapter 2, Division 3, Sec. 2-107, et al.
[4] This Court and our Supreme Court have on prior occasions chronicled the expansive powers of the Receiver. It is undisputed, that the Receiver is delegated, inter alia: (1) all the powers of the fiscal overseer and budget commission; and (2) the power to exercise any function or power of any municipal officer or employee, board, authority or commission. See § 45-9-7(b). Specifically, the Receiver has the right to exercise the powers of the elected officials under the general laws, special laws, and the city or town charter and ordinances relating to or impacting the fiscal stability of the city or town. See § 45-9-7(c). Those powers, which are superior to and supersede those of the elected officials, include the right to: (1) amend, formulate and execute the annual municipal budget; (2) review and approve or disapprove all proposed contracts for goods and services; and (3) alter or rescind any action or decision of any municipal officer, employee, board, authority or commission. See §§ 45-9-6(d)(1),-6(d)(6),-6(d)17). Therefore, the Act undoubtedly granted the Receiver the ultimate authority and power not only to rescind Mayor Moreau's decision, but also the City Council's aforementioned resolution.
[5] "For the purposes of [§ 45-9-11], the word `official' shall mean a city or town department head, permanent, temporary or acting . . . and all members of municipal boards, committees . . . and commissions which recommend, authorize or approve the expenditure of funds." Sec. 45-9-11(c).
[6] "Cause" is defined as "[s]omething that produces an effect or result." Black's Law Dictionary 250 (9th ed. 2009);see also The American Heritage Dictionary
296 (4th ed. 2011) ("The producer of an effect, result, or consequence.").
[7] To qualify as a "sham" and fall outside the protection of the Anti-SLAPP Statute, the petitioning activity or free speech must be both objectively and subjectively baseless.See § 9-33-2. "Objectively baseless" means "that no reasonable person exercising the right of speech or petition could realistically expect success in procuring such government action, result, or outcome." Id. A petitioning activity is "subjectively baseless in the sense that it is actually an attempt to use the governmental process itself for its own direct effects."Id.

 *Page 1